PHILIP SCHUYLER, Respondent, v. ERNEST CURTIS and Others, Appellants.

*Project to erect a statue of a person against the wishes of her relatives — when equity will interfere to prevent its execution.*

An unincorporated society, calling itself the Women's Memorial Fund Association, announced a project of placing a life-size statue of Mrs. G. L. Schuyler, to be designated as the " Typical Philanthropist," on public exhibition at the Columbian Exposition of 1893. The society stated that a contract had been made with a sculptor for the execution of the statue, and began raising funds for the purpose.

Thereupon a nephew of Mrs. Schuyler, with the approval of all her nearest relatives, brought this action to restrain such action, and an injunction was granted.

*Held*, that the action could be maintained.

That the wishes of the near relatives of Mrs. Schuyler must control.

That a stranger had no right to invade the right of privacy which attaches to a person when living, and to her memory when dead.

That the fact that the plaintiff had suffered no pecuniary damages was not material, for equity will interfere to prevent wrongs where there is no remedy at law by damages.

Appeal by the defendants, Ernest Curtis and others, from an order of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 19th day of October, 1891, continuing, during the pendency of this action, an injunction restraining the defendants from making or exhibiting a statute of Mary M. Hamilton Schuyler, or causing the same to be made and exhibited in any way; from soliciting or receiving subscriptions in

any way for a statute of the said Mary M. Hamilton Schuyler, and from proceeding in any way with the execution of a project of the so-called "Woman's Memorial Fund Association," to make and exhibit a statute of the said Mary M. Hamilton Schuyler.

*Walter S. Logan*, for the appellants.

*J. P. Ludlow*, for the respondent.

Van Brunt, P. J.:

The plaintiff is the nephew and stepson of one Mrs. G. L. Schuyler, and the defendants, with the exception of the defendant Hartley, are the officers and members of an unincorporated association which they call the Womens' Memorial Fund Association.

This association having announced the project of placing a life-size statue of Mrs. Schuyler, to be designated " The Typical Philanthropist," on public exhibition at the Columbian Exposition, to be held in Chicago in 1893 ; and having announced that a contract had been made with the defendant Hartley, a professional sculptor of some reputation, for the execution of this statue ; and having undertaken to raise money by public subscription for this purpose, this action was brought by the plaintiff, representing and with the approval of all the nearest relatives of the said Mrs. Schuyler, to enjoin the execution of this project ; and a motion was made for an injunction *pendente lite*, which was granted upon the ground that the said Mrs. Schuyler was not a public character; *i. e.*, had not placed herself before the public, either in accepting public office or in becoming a candidate for office or as an *artiste* or *litterateure*, and from the order thereupon entered this appeal is taken.

While concurring with the conclusion arrived at by the learned justice below, I cannot subscribe to the doctrine which seems to pervade the opinion rendered upon the decision of the motion, that if Mrs. Schuyler had been a public character, as defined by him, this motion should have been denied.

The claim that a person who voluntarily places himself before the public, either by accepting public office or by becoming a candidate for office or as an artist or literary man, thereby surrenders his personality, while living and his memory when dead, to the public to be used or abused, as any one of that irresponsible

body may see fit, cannot for a moment be entertained. It is undoubtedly true that by occupying a public position or by making an appeal to the public a person surrenders such part of his personality or privacy as pertains to and affects the position which he fills or seeks to occupy ; but no further. And certainly his memory, when dead, does not necessarily thereby become public property.

It is urged upon the part of the appellants that even if Mrs. Schuyler were alive, and had the same objection to the defendants' proposed action that the plaintiff now has, she would be remediless and powerless. If such were the fact, it would certainly be a blot upon our boasted system of jurisprudence that the courts were powerless to prevent the unwarranted doing of things by persons who are mere volunteers, which would wound in the most cruel manner the feelings of many a sensitive nature.

It is further urged that the plaintiff has no standing in court, and that the fancied injury to the plaintiff complained of, if any such injury can be in any way discovered, is certainly not such an injury as the court will grant an injunction to prevent, because it is not an injury to his person, to his estate, or to his good name, and is not a violation of his privacy or seclusion, and because the plaintiff stands in the same relation to the defendants and to their project as does all the rest of the world, and in no other relation.

The result of this claim is that when a person is dead there is no power in any court to protect his memory, no matter how outrageously it may be insulted. The feelings of relatives and friends may be outraged, and the memory of the deceased degraded with impunity by any person who may desire thus to affect the living. It seems to us that such a proposition carries its own refutation with its statement. It cannot be that by death all protection to the reputation of the dead and the feelings of the living, in connection with the dead, has absolutely been lost. The memory of the deceased belongs to the surviving relatives and friends, and such relatives have a right to see that that which would not have been permitted in respect to the deceased when living shall not be done with impunity when the subject has become incapable of protecting himself. It is undoubtedly true that cases of the character now before the court are not to be found in the books. But it is probably the first time in the history of the world that the audacious claim

which is here presented has ever been advanced. If it had, we have no doubt the books would have contained a record in connection with the same.

The fact that the plaintiff has suffered no pecuniary damage, redress for which is sought in this action, is no answer to the application, because one of the most important departments in the jurisdiction of courts of equity is the prevention of wrongs which would be otherwise irreparable because courts of law cannot afford any remedy in damages.

The order appealed from should be affirmed, with costs.

BARRETT, J., concurred.

Order affirmed, with costs.