[Civ. No. 346. Fourth Appellate District.—February 28, 1931.]

GABRIELLE DARLEY MELVIN, Appellant, v. DOROTHY DAVENPORT REID et al., Respondents.

286

[black redaction bars]

M. W. Purcell, Ben F. Griffith and Hugh W. Darling for Appellant.

Walter E. Burke for Respondents.

MARKS, J.—Appellant filed her complaint in the court below seeking judgment against defendants for money. The complaint contains four causes of action separately stated. The first is based upon the violation of what has become known as the "right of privacy". The other three causes of action are based upon a supposed property right in incidents of her life and her maiden name. Respondents filed general and special demurrers to each count of the complaint which were sustained. Appellant refused to amend and appealed from the judgment entered after the right to amend had expired. Respondents make no point on their special demurrers and the sole question to be decided upon this appeal is whether or not causes of action are stated.

It is alleged that appellant's maiden name was Gabrielle Darley; that a number of years ago she was a prostitute and was tried for murder, the trial resulting in her acquittal; that during the year 1918, and after her acquittal, she abandoned her life of shame and became entirely rehabilitated; that during the year 1919, she married Bernard Melvin and commenced the duties of caring for their home, and thereafter at all times lived an exemplary, virtuous, honorable and righteous life; that she assumed a place in re-

spectable society and made many friends who were not aware of the incidents of her earlier life; that during the month of July, 1925, the defendants, without her permission, knowledge or consent, made, photographed, produced and released a moving picture film entitled "The Red Kimono" and thereafter exhibited it in moving picture houses in California, Arizona, and throughout many other states; that this moving picture was based upon the true story of the past life of appellant and that her maiden name, Gabrielle Darley, was used therein; that defendants featured and advertised that the plot of the film was the true story of the unsavory incidents in the life of appellant; that Gabrielle Darley was the true name of the principal character, and that Gabrielle Darley was appellant; that by the production and showing of the picture, friends of appellant learned for the first time of the unsavory incidents of her early life. This caused them to scorn and abandon her and exposed her to obloquy, contempt, and ridicule, causing her grievous mental and physical suffering to her damage in the sum of fifty thousand dollars. These allegations were set forth in the first cause of action. It will not be necessary to detail the other three causes of action which are based upon an invasion of a supposed property right.

The law of privacy is of recent origin. It was first discussed in an essay published in a law journal in 1860. It did not gain prominence or notice of the bench or bar until an article appeared in 4 Harvard Law Review, page 193, written by the Honorable Louis D. Brandeis in collaboration with Samuel D. Warren. Since the publication of this article a number of cases have arisen in various states involving the so-called doctrine of the right of privacy. It is recognized in some jurisdictions while others have refused to put it into effect.

A reading of most of the decisions in jurisdictions recognizing this right leaves the mind impressed with the lack of uniformity in the reasoning employed by the various jurists supporting it. Most of the cases turn upon questions of breaches of contracts, either express or implied, such as the breach of an implied contract on the part of a photographer to print only such pictures as may be ordered by his subject, and not to print others and use them for purposes of advertising. Others are based upon the breach of a trust

or confidence which one placed in or gave to another. Others recognize a property right in private letters and private writings which will not permit their publication without consent. In others the publication is so nearly akin to a libel that the final conclusions could be supported under the law of libel without invoking the doctrine of the right of privacy. In practically all jurisdictions in which this right is not recognized the decisions are based upon the lack of a statute giving the plaintiff the right to protect a likeness or an incident of life since the ancient common law did not recognize any such right. In the leading case of *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538 [89 Am. St. Rep. 828, 59 L. R. A. 478, 64 N. E. 442], the decision was based upon the lack of any statutory enactment giving a cause of action to protect such a right and the failure of the common law to recognize it. Shortly after this decision was handed down the legislature of New York enacted a law prohibiting the publication of a person's likeness, or the story of, or incidents in his life without his consent, for purposes of advertisement or gain. Since 1903, when this legislation was enacted, practically all of the New York cases are based upon it and are therefore of little assistance to us here.

The question is a new one in California. The only case to which we have been cited which even remotely relates to it is that of *Crane* v. *Heine,* 35 Cal. App. 466 [170 Pac. 433]. This case, however, furnishes us with no authority for adopting in this state the doctrine of the right of privacy as it is known in other jurisdictions.

No good purpose could be gained by reviewing in detail the many decisions from other jurisdictions in which this right has been discussed. For those who may be studiously inclined and who desire to pursue this question further we cite the following cases from courts which have both adopted, and refused to accept the doctrine of the right of privacy. (*Monson* v. *Tussaud,* (1894) 1 Q. B. 671; *Prince Albert* v. *Strange,* 1 Macn. & G. 25; *Dockrell* v. *Dougall,* 80 L. T. (N. S.) 556; *Clark* v. *Freeman,* 11 Beav. 112; *Pollard* v. *Photographic Co.,* L. R. 40 Ch. D. 345; *Corelli* v. *Wall,* 22 Times L. R. 532; *DeMay* v. *Roberts,* 46 Mich. 160 [41 Am. Rep. 154, 9 N. W. 146]; *Pavesich* v. *New England etc. Co.,* 122 Ga. 190 [106 Am. St. Rep. 104, 2 Ann. Cas. 561, 69

L. R. A. 101, 50 S. E. 68]; *Schultz* v. *Frankfort etc. Co.,* 151 Wis. 537 [43 L. R. A. (N. S.) 520, 139 N. W. 386]; *Schulman* v. *Whitaker,* 117 La. Ann. 704 [8 Ann. Cas. 1174, 7 L. R. A. (N. S.) 274, 42 South. 227]; *Mabry* v. *Kettering,* 89 Ark. 551 [16 Ann. Cas. 1123, 117 S. W. 746]; *Klug* v. *Sheriffs,* 129 Wis. 468 [116 Am. St. Rep. 967, 9 Ann. Cas. 1013, 7 L. R. A. (N. S.) 362, 109 N. W. 656]; *Foster-Milburn Co.* v. *Chinn,* 134 Ky. 424 [135 Am. St. Rep. 417, 34 L. R. A. (N. S.) 1137, 120 S. W. 364]; *Douglas* v. *Stokes,* 149 Ky. 506 [Ann. Cas. 1914B, 374, 42 L. R. A. (N. S.) 386, 149 S. W. 849]; *Edison* v. *Edison Polyform Co.,* 73 N. J. Eq. 137 [67 Atl. 392]; *Moore* v. *Rugg,* 44 Minn. 28 [20 Am. St. Rep. 539, 9 L. R. A. 58, 46 N. W. 141]; *Marks* v. *Jaffa,* 6 Misc. Rep. 290 [26 N. Y. Supp. 908]; *Murray* v. *Gast etc. Co.,* 8 Misc. Rep. 36 [28 N. Y. Supp. 271]; *Munden* v. *Harris,* 153 Mo. App. 652 [134 S. W. 1076]; *Kunz* v. *Allen,* 102 Kan. 883 [L. R. A. 1918D, 1151, 172 Pac. 532]; *Brex* v. *Smith,* 104 N. J. Eq. 386 [146 Atl. 34]; *Jones* v. *Herald Post Co.,* 230 Ky. 227 [18 S. W. (2d) 972]; *Brents* v. *Morgan,* 221 Ky. 765 [55 A. L. R. 964, 299 S. W. 967]; *Byfield* v. *Candler,* 33 Ga. App. 275 [125 S. E. 905]; *Roberson* v. *Rochester Folding Box Co., supra; Rhodes* v. *Sperry & Hutchinson Co.,* 193 N. Y. 223 [127 Am. St. Rep. 945, 34 L. R. A. (N. S.) 1143, 85 N. E. 1097]; *Henry* v. *Cherry & Webb,* 30 R. I. 13 [136 Am. St. Rep. 928, 18 Ann. Cas. 1006, 24 L. R. A. (N. S.) 991, 73 Atl. 97]; *Corliss* v. *E. W. Walker Co.,* 57 Fed. 434 [31 L. R. A. 283]; Id., 64 Fed. 280 [31 L. R. A. 283]; *Atkinson* v. *John E. Doherty & Co.,* 121 Mich. 372 [80 Am. St. Rep. 507, 46 L. R. A. 219, 80 N. W. 285]; *Hillman* v. *Star Publishing Co.,* 64 Wash. 691 [35 L. R. A. (N. S.) 595, 117 Pac. 594]; *Schuyler* v. *Curtis,* 64 Hun (N. Y.), 594 [19 N. Y. Supp. 264]; Id., 24 N. Y. Supp. 509; Id., 147 N. Y. 434 [49 Am. St. Rep. 671, 31 L. R. A. 286, 42 N. E. 22]; *Humiston* v. *Universal Film Co.,* 189 App. Div. 467 [178 N. Y. Supp. 752]; *Binns* v. *Vitagraph Co.,* 210 N. Y. 51 [Ann. Cas. 1915B, 1024, L. R. A. 1915C, 839, 103 N. E. 1108].)

The right of privacy as recognized in a number of states has been defined as follows: "The right of privacy has been defined as the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short it is the right to be let alone. 21 R. C. L. 1197, 1198.

There are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion, and it is not an invasion of his right of privacy to publish his photograph with an account of such occurrence." (*Jones* v. *Herald Post Co., supra.*)

A few general principles, founded on authority or reason, seem to run through most of the better considered decisions from the jurisdictions which recognize the doctrine as well as those which do not. We may summarize them as follows:

1. The right of privacy was unknown to the ancient common law.

2. It is an incident of the person and not of property— a tort for which a right of recovery is given in some jurisdictions.

3. It is a purely personal action and does not survive, but dies with the person.

4. It does not exist where the person has published the matter complained of, or consented thereto.

5. It does not exist where a person has become so prominent that by his very prominence he has dedicated his life to the public and thereby waived his right to privacy. There can be no privacy in that which is already public.

6. It does not exist in the dissemination of news and news events, nor in the discussion of events of the life of a person in whom the public has a rightful interest, nor where the information would be of public benefit as in the case of a candidate for public office.

7. The right of privacy can only be violated by printings, writings, pictures or other permanent publications or reproductions, and not by word of mouth.

8. The right of action accrues when the publication is made for gain or profit. (This however is questioned in some cases.)

From the foregoing it follows as a natural consequence that the use of the incidents from the life of appellant in the moving picture is in itself not actionable. These incidents appeared in the records of her trial for murder which is a public record open to the perusal of all. The very fact that they were contained in a public record is sufficient to negative the idea that their publication was a violation of a right of privacy. When the incidents of a life are

so public as to be spread upon a public record they come within the knowledge and into the possession of the public and cease to be private. Had respondents, in the story of "The Red Kimono", stopped with the use of those incidents from the life of appellant which were spread upon the record of her trial, no right of action would have accrued. They went further and in the formation of the plot used the true maiden name of appellant. If any right of action exists it arises from the use of this true name in connection with the true incidents from her life together with their advertisements in which they stated that the story of the picture was taken from true incidents in the life of Gabrielle Darley who was Gabrielle Darley Melvin.

In the absence of any provision of law we would be loath to conclude that the right of privacy as the foundation for an action in tort, in the form known and recognized in other jurisdictions, exists in California. We find, however, that the fundamental law of our state contains provisions which, we believe, permit us to recognize the right to pursue and obtain safety and happiness without improper infringements thereon by others.

Section 1 of article I of the Constitution of California provides as follows: "All men are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property; and pursuing and obtaining safety and happiness."

The right to pursue and obtain happiness is guaranteed to all by the fundamental law of our state. This right by its very nature includes the right to live free from the unwarranted attack of others upon one's liberty, property, and reputation. Any person living a life of rectitude has that right to happiness which includes a freedom from unnecessary attacks on his character, social standing or reputation.

The use of appellant's true name in connection with incidents of her former life in the plot and advertisements was unnecessary and indelicate and a wilful and wanton disregard of that charity which should actuate us in our social intercourse and which should keep us from unnecessarily holding another up to the scorn and contempt of upright members of society.

Upon demurrer the allegations of the complaint must be taken as true. We must therefore conclude that eight years before the production of "The Red Kimono", appellant had abandoned her life of shame, had rehabilitated herself and had taken her place as a respected and honored member of society. This change having occurred in her life, she should have been permitted to continue its course without having her reputation and social standing destroyed by the publication of the story of her former depravity with no other excuse than the expectation of private gain by the publishers.

One of the major objectives of society as it is now constituted, and of the administration of our penal system, is the rehabilitation of the fallen and the reformation of the criminal. Under these theories of sociology it is our object to lift up and sustain the unfortunate rather than tear him down. Where a person has by his own efforts rehabilitated himself, we, as right-thinking members of society, should permit him to continue in the path of rectitude rather than throw him back into a life of shame or crime. Even the thief on the cross was permitted to repent during the hours of his final agony.

We believe that the publication by respondents of the unsavory incidents in the past life of appellant after she had reformed, coupled with her true name, was not justified by any standard of morals or ethics known to us and was a direct invasion of her inalienable right guaranteed to her by our Constitution, to pursue and obtain happiness. Whether we call this a right of privacy or give it any other name is immaterial because it is a right guaranteed by our Constitution that must not be ruthlessly and needlessly invaded by others. We are of the opinion that the first cause of action of appellant's complaint states facts sufficient to constitute a cause of action against respondents.

As we have observed, the other causes of action of the complaint are based upon a supposed property right in her name and in the incidents of her life. We have found no authorities sustaining such a property right in the story of one's life. Appellant's cause of action must rest on tort and tort alone. The general demurrer was properly sustained to the second, third and fourth causes of action.

The judgment is reversed with instructions to the trial court to overrule respondents' demurrers to the first cause

of action of the complaint and permit them to answer should they be so advised.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 25, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1931.