[L. A. No. 22038.   In Bank.   Feb. 17, 1953.]

JOHN W. GILL et al., Appellants, v. HEARST PUBLISH-
ING COMPANY, INC. et al., Respondents.

private

Shacknove & Goldman and Ben F. Goldman, Jr., for Appellants.

Flint & MacKay and Arch R. Tuthill for Respondents.

Loeb & Loeb; Lawler, Felix & Hall; Price, MacDonald & Knox; John Hamlyn; Cosgrove, Cramer, Diether & Rindge, and Binford & Binford as Amici Curiae on behalf of Respondents.

SPENCE, J.—As in the related case of *Gill* v. *Curtis Pub. Co.*, 38 Cal.2d 273 [239 P.2d 630], plaintiffs, husband and wife, sought damages for an alleged invasion of their right of privacy. Defendants' demurrer to the amended complaint was sustained without leave to amend. From the judgment accordingly entered, plaintiffs appeal. It appears that plaintiffs properly challenge the correctness of the trial court's ruling insofar as it foreclosed their right to amend.

Plaintiffs' original complaint was predicated solely on the charge that in the October, 1947, issue of Harper's Bazaar, a magazine published and distributed by the corporate defendants, there appeared an unauthorized photograph of plaintiffs taken by defendants' employee while plaintiffs were seated in an affectionate pose at their place of business, a confectionery and ice cream concession in the Farmers' Market in Los Angeles. This photograph was used to illustrate an article entitled "And So the World Goes Round," a short commentary reaffirming "the poet's conviction that the world could not revolve without love," despite "vulgarization" of the sentiment by some, and that ballads may still be written about everyday people in love. A demurrer to that original complaint was sustained on the ground that the statute of limitations had run, but leave to amend was granted. Plain-

tiffs do not question the propriety of that ruling. (Code Civ. Proc., § 340, subd. 3.)

Plaintiffs thereupon amended their complaint to allege that the same photograph was republished with defendants' consent in the May, 1949, issue of the Ladies' Home Journal, a monthly magazine published and distributed by the Curtis Publishing Company. The same publication was involved in *Gill* v. *Curtis Pub. Co., supra,* 38 Cal.2d 273. Specifically, it is here alleged that the "picture" was republished with the "knowledge, permission and consent" of defendants and that "credit" for the publication was given to and required by defendants; that the published photograph depicts plaintiffs in an "uncomplimentary" pose; that plaintiffs' right of privacy was thereby invaded and plaintiffs were subjected to humiliation and annoyance to their damage in the sum of $25,000. While the picture was used for illustration of an article entitled "Love" (see *Gill* v. *Curtis Pub. Co., supra,* p. 275), plaintiffs did not allege that defendants also consented to the publication of the article. However, a copy of the picture, with the accompanying article, is attached as an exhibit to the amended complaint. Defendants maintain that since plaintiffs failed to make the direct allegation that defendants consented to the publication of the article, plaintiffs' alleged cause of action must be deemed to rest solely on the publication of the photograph without reference to the accompanying text or caption under the picture.

It is true that in their argument in opposing defendants' demurrer to their amended complaint, plaintiffs stressed the publication of the photograph alone as constituting a violation of their right of privacy, without regard to its use in connection with the article. However, as appears from its memorandum opinion in sustaining the demurrer without leave to amend, the trial court attached no significance to the matter of whether plaintiffs charged defendants with mere consent to publication of the photograph or included also consent to publication of the accompanying article. In either event the trial court was of the view that there had been no invasion of plaintiffs' right of privacy. Under such circumstances defendants may not successfully urge a waiver by plaintiffs or estoppel in limitation of the premise of their alleged damage claim. Regardless of plaintiffs' theory of liability, the ruling of the trial court would have been the same—that a cause of action had not been stated. Therefore

such authorities as *Gordon* v. *Kifer,* 26 Cal.App.2d 252, 255 [79 P.2d 164]; *Alberts* v. *American Casualty Co.,* 88 Cal.App. 2d 891, 896 [200 P.2d 37]; and 2 Cal.Jur. 844-852 are not in point.

As indicated in *Gill* v. *Curtis Pub. Co., supra,* 38 Cal.2d 273, 279, defendants would be liable in the event of their consent to publication of the photograph in connection with the article in the Ladies' Home Journal. Plaintiffs therefore maintain that any defect in the recitals of the amended complaint with reference to defendants' connection with the publication of the article as well as the photograph could be easily corrected by amendment. The incorporation of the article as an exhibit constitutes some basis for an inference that it may have been intended as an inseparable part of the photograph in presenting the extent of plaintiffs' complaint. Moreover, the allegation of consent is broad and it cannot be said that it necessarily negates a consent to publishing the article. The objection to plaintiffs' pleading thus goes to the matter of effecting a clarification of an uncertainty or an ambiguity. Manifestly, such defect is capable of being cured by amendment. (*Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 719 [128 P.2d 522, 141 A.L.R. 1358]; *Washer* v. *Bank of America,* 21 Cal.2d 822, 833 [136 P.2d 297, 155 A.L.R. 1338].) Under these circumstances, the trial court abused its discretion in sustaining defendants' demurrer without leave to amend. (*Wilk* v. *Vencill,* 30 Cal.2d 104, 109 [180 P.2d 351].)

The recognition of plaintiffs' right to proceed in the event of proper clarification involves the further observation that mere publication of the photograph standing alone does not constitute an actionable invasion of plaintiffs' right of privacy. The right "to be let alone" and to be protected from undesired publicity is not absolute but must be balanced against the public interest in the dissemination of news and information consistent with the democratic processes under the constitutional guaranties of freedom of speech and of the press. (U.S. Const., Amends. I, XIV; Cal. Const. art. I, § 9; 41 Am.Jur., Privacy, § 9, pp. 931-933; Nizer, *The Right of Privacy,* 39 Mich.L.Rev., 526, 528-529; *Gill* v. *Curtis Pub. Co., supra,* 38 Cal.2d 273, 277-278.) The right of privacy may not be extended to prohibit *any* publication of matter which may be of public or general interest, but rather the "general object in view is to protect the privacy of private life, and to whatever degree and in whatever connection a

man's life has ceased to be private, before the publication under consideration has been made, to that extent the protection is to be withdrawn." (*Brandeis-Warren Essay*, 4 Harv. L.Rev., 193, 215; *Metter* v. *Los Angeles Examiner*, 35 Cal. App.2d 304, 312 [95 P.2d 491].) ▮ Moreover, the right of privacy is determined by the norm of the ordinary man; that is to say, the alleged objectionable publication must appear offensive in the light of "ordinary sensibilities." (41 Am.Jur., Privacy, § 12, p. 934.) ▮ As has been said: ". . . liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues. . . . It is only when the defendant should know that the plaintiff would be justified in feeling seriously hurt by the conduct that a cause of action exists." (Rest., Torts, Vol. 4, § 867, comment d, pp. 400-401; see, also, cases collected: Annos. 138 A.L.R. 22, 46; 168 A.L.R. 446, 452; 14 A.L.R.2d 750, 752.) ▮ Whether there has been such an offensive invasion of privacy is "to some extent one of law." (41 Am. Jur., Privacy, § 12, p. 935; *Schuyler* v. *Curtis*, 147 N.Y. 434 [42 N.E. 22, 26, 31 A.L.R. 286, 49 Am.St. Rep. 671]; *Reed* v. *Real Detective Pub. Co.*, 64 Ariz. 294 [162 P.2d 133, 139]; *Cason* v. *Baskin*, 155 Fla. 198 [20 So.2d 243, 251, 168 A.L.R. 430].)

The picture allegedly was taken at plaintiffs' "place of business," a confectionery and ice cream concession in the Farmers' Market, Los Angeles. It shows plaintiffs, a young man and young woman, seated at a counter near a cash register, the young woman apparently in intent thought, with a notebook and pencil in her hands, which rest on the counter. Plaintiffs are dressed informally and are in a romantic pose, the young man having one arm about the young woman. There are at least five other persons plainly visible in the photograph in positions in close proximity to plaintiffs as the central figures. Apparently the picture has no particular news value but is designed to serve the function of entertainment as a matter of legitimate public interest. (Rest., Torts, vol. 4, § 867, comments c and d, pp. 399-401.) ▮ However, the constitutional guaranties of freedom of expression apply with equal force to the publication whether it be a news report or an entertainment feature (*Lovell* v. *Griffin*, 303 U.S. 444, 452 [58 S.Ct. 666, 82 L.Ed. 949]; *Winters* v. *New*

*York,* 333 U.S. 507, 510 [68 S.Ct. 665, 92 L.Ed. 840] ; *United States* v. *Paramount Pictures, Inc.,* 334 U.S. 131, 166 [68 S.Ct. 915, 92 L.Ed. 1260]), and defendants' liability accrues only in the event that it can be said that there has been a wrongful invasion of plaintiffs' right of privacy. (*Cf. Gill* v. *Curtis Pub. Co., supra,* 38 Cal.2d 273, 280.)

 In considering the nature of the picture in question, it is significant that it was not surreptitiously snapped on private grounds, but rather was taken of plaintiffs in a pose voluntarily assumed in a public market place. So distinguishable are cases such as *Barber* v. *Time, Inc.,* 348 Mo. 1199 [159 S.W.2d 291], where the picture showed plaintiff in her bed at a hospital, which circumstance was held to constitute an infringement of the right of privacy. Here plaintiffs, photographed at their concession allegedly ''well known to persons and travelers throughout the world'' as conducted for ''many years'' in the ''world-famed'' Farmers' Market, had voluntarily exposed themselves to public gaze in a pose open to the view of any persons who might then be at or near their place of business. By their own voluntary action plaintiffs waived their right of privacy so far as this particular public pose was assumed (41 Am.Jur., Privacy, § 17, p. 937), for ''there can be no privacy in that which is already public.'' (*Melvin* v. *Reid,* 112 Cal.App. 285, 290 [297 P. 91].) The photograph of plaintiffs merely permitted other members of the public, who were not at plaintiffs' place of business at the time it was taken, to see them as they had voluntarily exhibited themselves.  Consistent with their own voluntary assumption of this particular pose in a public place, plaintiffs' right to privacy as to this photographed incident ceased and it in effect became a part of the public domain (Brandeis-Warren Essay, 4 Harv. L.Rev. 193, 218; *Melvin* v. *Reid, supra,* 112 Cal.App. 285, 290-291), as to which they could not later rescind their waiver in an attempt to assert a right of privacy. (*Cohen* v. *Marx,* 94 Cal.App.2d 704, 705 [211 P.2d 320].) In short, the photograph did not disclose anything which until then had been private, but rather only extended knowledge of the particular incident to a somewhat larger public than had actually witnessed it at the time of occurrence.

 Nor does there appear to be anything ''uncomplimentary'' or discreditable in the photograph itself, so that its publication might be objectionable as going ''beyond the

limits of decency" and reasonably indicate defendants' conduct to be such that they "should have realized it would be offensive to persons of ordinary sensibilities." (Rest. Torts, vol. 4, § 867, comment d, pp. 400-401.) Here the picture of plaintiffs, sitting romantically close to one another, the man with his arm around the woman, depicts no more than a portrayal of an incident which may be seen almost daily in ordinary life—couples in a sentimental mood on public park benches, in railroad depots or hotel lobbies, at public games, the beaches, the theatres. Such situation is readily distinguishable from cases where the right of privacy has been enforced with regard to the publication of a picture which was shocking, revolting or indecent in its portrayal of the human body. (See *Douglas* v. *Stokes,* 149 Ky. 506 [149 S.W. 849, 42 L.R.A.N.S. 386, Ann.Cas. 1914B 374] ; *Bazemore* v. *Savannah Hospital,* 171 Ga. 257 [155 S.E. 194].) In fact, here the photograph may very well be said to be complimentary and pleasing in its pictorial representation of plaintiffs.

Plaintiffs have failed to cite, and independent research has failed to reveal, any case where the publication of a mere photograph under the circumstances here prevailing —a picture (1) taken in a pose voluntarily assumed in a public place and (2) portraying nothing to shock the ordinary sense of decency or propriety—has been held an actionable invasion of the right of privacy. To so hold would mean that plaintiffs "under all conceivable circumstances had an absolute legal right to [prevent publication of] any photograph of them taken without their consent. If every person has such a right, no [periodical] could lawfully publish a photograph of a parade or a street scene. We are not prepared to sustain the assertion of such a right." (*Themo* v. *New England Newspaper Pub. Co.,* 306 Mass. 54 [27 N.E.2d 753, 755] ; see Rest., Torts, vol. 4, § 867, comment c, pp. 399-400.) In so concluding, it must be remembered that there is no contention here that the publication of plaintiffs' photograph was for advertising or trade purposes. (41 Am.Jur., Privacy, § 22, p. 941; e.g. *Pavesich* v. *New England Life Ins. Co.,* 122 Ga. 190 [50 S.E. 68, 106 Am.St.Rep. 104, 2 Ann. Cas. 561, 69 L.R.A. 101] ; *Kunz* v *Allen,* 102 Kans. 883 [172 P. 532, L.R.A. 1918D 1151] ; also 26 So.Cal.L.Rev. 102, 103.)

As heretofore indicated, however, we conclude that plaintiffs should have been accorded the right to amend their com-

plaint, and that the trial court abused its discretion in sustaining defendants' demurrer without leave to amend.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I concur in that part of the majority decision which reverses the judgment for refusal of the trial court to allow plaintiffs to amend. I dissent, however, from the holding that the publication of the photograph alone did not violate plaintiffs' right of privacy.

It is difficult to ascertain upon what ground the majority opinion rests as will hereafter appear. As outlined in *Gill* v. *Curtis Pub. Co.*, 38 Cal.2d 273 [239 P.2d 630], and authorities there cited, there are two main questions involved in right of privacy cases: (1) Is the publication of a character which would offend the feelings and sensibilities of the ordinary person; and (2) if it does so offend, is there such a public interest in the subject matter of the publication with reference to its news or educational significance that it may be published with impunity. In the first instance the question is whether there has been any tort (violation of the right of privacy) committed, and in the second, having found the tort, is it privileged.

Referring to the second question first, it should be quite obvious that there is no news or educational value whatsoever in the photograph alone. It depicts two persons (plaintiffs) in an amorous pose. There is nothing to show whether they are or are not married. While some remote news significance might be attached to persons in such a pose on the theory that the public likes and is entitled to see persons in such a pose, there is no reason why the publisher need invade the privacy of John and Jane Doe for his purpose. He can employ models for that purpose and the portion of the public interested will never know the difference but its maudlin curiosity will be appeased.

For the same reasons the discussion in the majority opinion to the effect that plaintiffs consented to the publication because they assumed the pose in a public place is fallacious. But in addition, such a theory is completely at odds with the violation of the right of privacy. By plaintiffs' doing what they did in view of a tiny fraction of the public, does not mean that they consented to observation by the millions

of readers of the defendant's magazine. In effect, the majority holding means that anything anyone does outside of his own home is with consent to the publication thereof, because, under those circumstances he waives his right of privacy even though there is no news value in the event. If such were the case, the blameless exposure of a portion of the naked body of a man or woman in a public place as the result of inefficient buttons, hooks or other clothes-holding devices could be freely photographed and widely published with complete immunity. The majority opinion confuses the situation, as have some of the other cases, with the question of newsworthiness. It has been said that when a person is involved in either a public or private event, voluntarily or involuntarily, of news value, he has waived his right of privacy. Plainly such is not the case where the event is involuntary such as the victim of a holdup. As we said in *Gill* v. *Curtis Pub. Co., supra,* 38 Cal.2d 273, 281: "It should be observed, that referring to the use of a person's likeness for a legitimate public interest as not actionable because it indicates a waiver by the person of his right, is of doubtful validity, for it has been applied whether the publication having news value arose out of an incident of his own making or involuntarily and without his fault thrust upon him." There is no basis for the conclusion that the second a person leaves the portals of his home he consents to have his photograph taken under all circumstances thereafter. There being no legitimate public interest, there is no excuse for the publication.

The first ground, that the picture would not offend the senses of an ordinary person, is equally untenable. It is alleged in plaintiffs' complaint, and admitted by the demurrer that it so offended them. It is then a matter of proof at the trial. Certainly reasonable men could view the picture as showing plaintiffs in a sultry or sensual pose. For this court to say as a matter of law that such portrayal would not seriously offend the feelings of an ordinary man is to take an extreme view, to say the least. The question is one for the trier of fact. (*Gill* v. *Curtis Pub. Co., supra,* 38 Cal.2d 273, 280.) If it is in part a question of law it is so only to the extent that the right does not extend to "supersensitiveness or agoraphobia." (41 Am.Jur., Privacy, § 12.) An examination of the photograph shows that it would offend the feelings of persons other than oversensitive ones.

Finally, adding to the confusion of the precise ground upon which it rests, the majority opinion makes point of the fact that the picture was not used for advertising purposes, and that if it did not hold as it does, there would be liability for a person's picture appearing among others in a parade. Obviously the first has no bearing upon whether an ordinary man would be offended. The offense would exist or not exist regardless of whether it was used for advertising. The second adds nothing because the parade and those engaging in it are matters of public interest and the persons engaging therein are intentionally placing themselves on public display — parade.

In announcing a rule of law defining the right of a private citizen to be left alone, and not have his photograph published to the four winds, especially when he is depicted in an uncomplimentary pose, courts should consider the effect of such publication upon the sensibility of the ordinary private citizen, and not upon the sensibility of those persons who seek and enjoy publicity and notoriety and seeing their pictures on public display, or those who are in the "public eye" such as public officials, clergymen, lecturers, actors and others whose professional careers bring them in constant contact with the public and in whom the public or some segment thereof is interested. Obviously anything the latter group may do or say has news or educational value—such cannot be said of the persons engaged in private business or employment who constitute more than 90 per cent of our population. These private citizens, who desire to be left alone, should have and enjoy a right of privacy so long as they do nothing which can reasonably be said to have news value. Certainly this right is entitled to protection. It seems to me that the law should be so molded as to protect the right of the 90 per cent who do not desire publicity or notoriety and who may be offended by publications such as that here involved. And, when the right of privacy of such a person is violated, and redress is sought in the courts for the indignity suffered, the courts should apply the general rules applicable to the redress of wrongs and submit the issues of fact to a jury when demanded. But the majority of this court, following its present trend, has again seen fit to deny plaintiffs their constitutional right to a jury trial on the issues of fact here presented by arrogating to itself both the fact-finding and lawmaking power. To this holding I most emphatically dissent.