[No. A018467. First Dist., Div. One. Oct. 5, 1989.]

MARY ANN WARFIELD, Plaintiff and Appellant, v.
PENINSULA GOLF AND COUNTRY CLUB et al., Defendants
and Respondents.

COUNSEL

Melvin M. Belli, Sr., Harold Selan and Kevin McLean for Plaintiff and Appellant.

Michael J. Brady, Mark G. Bonino, Lawrence M. Guslani, and Ropers, Majeski, Kohn, Bently, Wagner & Kane for Defendants and Respondents.

OPINION

**RACANELLI, P. J.**—In this case concerning sexual discrimination in a country club membership, we review the propriety of the trial court's

dismissal of plaintiff's first amended complaint after sustaining defendants' demurrer without leave to amend.*

*Procedural Background*

In 1970, Richard and Mary Ann Warfield, as husband and wife, acquired a regular family membership in the Peninsula Golf and Country Club, a nonprofit, privately owned and operated, social and recreational club. The initial membership payment and regular monthly fees were paid with community property funds. Mary Ann and her children regularly used the club facilities and participated in its social events.

In February 1981, Richard and Mary Ann obtained an interlocutory decree of dissolution of marriage; the property settlement agreement awarded Mary Ann the family membership at Peninsula Golf and Country Club.[1]

In May 1981, the board of directors of the club, upon ascertaining that Richard no longer wished to maintain his membership, voted to terminate the Warfield membership under section 7.5 of the bylaws, whereby a regular family membership may be issued to an adult male only. Thereafter, the board (as required under the bylaws) tendered a redemption fee check to Mary Ann, which she refused to accept.

On November 2, 1981, Mary Ann filed a complaint for damages and injunctive relief against Peninsula Golf and Country Club and its board of directors as defendants. The multicount complaint alleged violations of Civil Code section 51 (Unruh Civil Rights Act); violations of constitutional right to due process and the common law right to fair procedure; discrimination based upon sex; libel based on information disseminated in defendant's newsletter; intentional infliction of emotional distress; and a request for a preliminary and permanent injunction.

In January 1982, the trial court issued a preliminary injunction enjoining defendant from terminating plaintiff's rights and privileges in the club. In February 1982, the court sustained defendant's demurrer with leave to amend as to all causes of action except those concerning due process, fair procedure and declaratory relief.

On March 9, 1982, plaintiff filed an amended complaint containing new allegations and adding a claim of invasion of privacy to the libel cause of

---

*For convenience of discussion, we will refer to defendants in the singular.

[1] The property settlement agreement was incorporated by reference into the interlocutory judgment. A separate court order awarded all right, title and interest in the membership to Mary Ann and ordered Richard to execute all necessary transfer documents.

action. The trial court sustained defendant's second demurrer without leave to amend as to all counts, and judgment of dismissal was entered on May 10, 1982. ■ ■ ■ ■ Following denial of plaintiff's postjudgment motions,[2] plaintiff appealed from the judgment entered.[3]

## Discussion

## I.

### Standard of Review

■ Plaintiff's challenge to the trial court's ruling sustaining the general demurrer is governed by settled principles: "In reviewing the sufficiency of a complaint against a general demurrer . . . 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 [172 P.2d 867].) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (See *Hill* v. *Miller* (1966) 64 Cal.2d 757, 759 [51 Cal.Rptr. 689, 415 P.2d 33].) And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793]; *Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].)" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "[W]e bear in mind our well established policy of liberality in reviewing a demurrer sustained without leave to amend: 'the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.'" (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) Further, "[w]hen a demurrer is

---

[2] Motions were made to disqualify for bias, to vacate judgment and to reinstate or continue injunction.

[3] Plaintiff's 81-page appendix in lieu of clerk's transcript fails to include the moving papers on which the trial court based its decision and neglects to include any of defendant's papers. Nor does it appear that plaintiff made any attempt to confer and reach agreement on a joint appendix. (See Cal. Rules of Court, rule 5.1(b), (d).)

Defendant requests that we impose monetary sanctions on plaintiff pursuant to California Rules of Court, rule 5.1(i)(2). Plaintiff's failure to comply with the applicable rules requiring a possible joint appendix and an accurate and adequate appendix warrants the imposition of sanctions against her fixed in the amount of $500.

sustained without leave to amend, the reviewing court may consider any tenable basis for amendment on appeal even though the theory was not presented to the trial court. [Citation.]" (*Bangert* v. *Narmco Materials, Inc.* (1984) 163 Cal.App.3d 207, 211 at fn. 1 [209 Cal.Rptr. 438], disapproved on another point in *Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1126, fn. 20 [245 Cal.Rptr. 658, 751 P.2d 923].)

## II.

### *Applicability of Unruh Civil Rights Act*

 Plaintiff's major contention on appeal is that the trial court erred in sustaining the demurrer to the causes of action for violation of the Unruh Civil Rights Act (Act) on the ground that defendant was not a business establishment.[4]

Civil Code section 51, as amended, prohibits sexual discrimination by any "business establishment." The statute provides in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

██ The Act has been construed as "this state's bulwark against arbitrary discrimination in places of public accommodation" and without which "facilities in private ownership, but otherwise open to the public, would be free under state law to exclude people for invidious reasons like sex, religion, age, and even race." (*Isbister* v. *Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72, 75 [219 Cal.Rptr. 150, 707 P.2d 212].)

The core question whether defendant is a "business establishment" within the meaning of the Act does not lend itself to a formula-like solution under the more traditional public-private classification scheme.

---

[4] Defendant requested the court below to take judicial notice of the fact that defendant was a private club not open to the public, as well as plaintiff's counsel's "admission" that the club is "truly a private membership club in the view that people cannot walk in and use the club." The former point remains to be discussed (*post*). As to the latter, plaintiff correctly argues that judicial notice of defendant's "private" status is inappropriate.

Unlike an answer to a request for admission relied upon by defendant (see *Del E. Webb Corp.* v. *Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824]), counsel's statement in another context during the hearing below does not constitute judicially noticeable fact. Furthermore, such an admission made at trial is "not binding if it is made improvidently or unguardedly, or if it is in any way ambiguous." (*Irwin* v. *Pacific Southwest Airlines* (1982) 133 Cal.App.3d 709, 714 [184 Cal.Rptr. 228].) Having examined the purported admission, we conclude counsel's statement was at best ambiguous and cannot serve as a factual substitute for the vigorously contested question of overarching significance.

In assessing the applicability of the Unruh Act, both parties rely on relevant legislative history, especially the fact that the initial draft of the bill prohibited discrimination by "all public *or private groups, organizations, associations,* business establishments, school and public facilities." (Italics added.) (See Horowitz, *The 1959 California Equal Rights in "Business Establishments" Statute—A Problem in Statutory Application* (1960) 33 So.Cal.L.Rev. 260.) Plaintiff argues that the language as finally drafted— "all business establishments of every kind whatsoever"—is meant to encompass categories that had been specifically listed in the first draft. Defendant, on the other hand, maintains that the elimination of such specific language indicates a legislative intention to exclude such groups from within the purview of the Act.

In its initial construction of the statute, as amended in 1959, the Supreme Court declared "that the term 'business establishments' was used in the broadest sense reasonably possible." (*Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 468 [20 Cal.Rptr. 609, 370 P.2d 313]; accord *Isbister* v. *Boys' Club of Santa Cruz, Inc., supra,* 40 Cal.3d at p. 76.) More recently, the court reasoned that the broadened scope of business establishments in the amended version of the statute indicated a legislative intent "to include therein all formerly specified private and public groups or organizations that may reasonably be found to constitute 'business establishments of every type whatsoever.'" The court then proceeded to explain: "Although our cases so far have all dealt with profit-making entities, we see no reason to insist that profit-seeking be a *sine qua non* for coverage under the act. Nothing in the language or history of its enactment calls for excluding an organization from its scope simply because it is nonprofit. [Citation.]" (*O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790, 795-796 [191 Cal.Rptr. 320, 662 P.2d 427].)

Thus, defendant's two-pronged argument for automatic exclusion as a business establishment under the Act (nonprofit status and elimination of "private groups" from the legislation) is wholly unpersuasive.

■ Accepting plaintiff's allegations at face value, defendant would appear to possess certain businesslike characteristics as discussed in several recent California cases. (See, e.g., *Isbister* v. *Boys' Club of Santa Cruz, Inc., supra,* 40 Cal.3d 72; *Rotary Club of Duarte* v. *Board of Directors* (1986) 178 Cal.App.3d 1035 [224 Cal.Rptr. 213], affd. *sub nom. Bd. of Dirs. of Rotary Int'l* v. *Rotary Club* (1987) 481 U.S. 537 [95 L.Ed.2d 474, 107 S.Ct. 1940] [upholding application of goods and services criteria to determine business establishment]; *Curran* v. *Mount Diablo Council of the Boy Scouts* (1983)

147 Cal.App.3d 712 [195 Cal.Rptr. 325, 38 A.L.R.4th 607], app. dism. (1984) 468 U.S. 1205 [82 L.Ed.2d 873, 104 S.Ct. 3574].)[5]

Plaintiff alleged, inter alia, that defendant operates a restaurant and bar and recreational facilities for its members and their guests and also leases its facilities to others. The furnishing of goods and services to members was considered in *Curran* and *Rotary Club* to be essential elements defining a business establishment. (See also dis. opn. of Mosk, J., in *O'Connor* v. *Village Green Owners Assn., supra,* 33 Cal.3d at p. 802.)

Moreover, the allegations concerning defendant's operation of a bar and restaurant and recreational facilities (presumably, a golf course, tennis courts, swimming pool and "pro" shops) give rise to an implication that some members will use the facilities for purposes of business meetings or entertainment with fees and related expenses paid or reimbursed by their employer.[6]

In addition, the court in *Rotary Club* recognized that there are "substantial business benefits" gained by belonging to an organization such as Rotary which are to be considered "when deciding whether an organization is bound by the Unruh Act." (*Rotary Club of Duarte* v. *Board of Directors, supra,* 178 Cal.App.3d at p. 1055.)

Thus, plaintiff's pleaded allegations, if proved, could qualify defendant club as a "business establishment" within the broad interpretation of that clause under the Act.

---

[5] In *Isbister,* the Supreme Court held that the Boys' Club of Santa Cruz was a business establishment covered by the Act in that it was a place of public accommodation with recreational facilities open to the community generally (with females excepted) and that such facilities were the club's principal activity and reason for existence. (40 Cal.3d 72.)

In *Rotary Club,* the Second District Court of Appeal held that both Rotary International (a nonprofit, worldwide organization) and the local club were business establishments within the meaning of the Act. The court concluded that the club was not private and was engaged in providing goods, services and facilities. (178 Cal.App.3d 1035.)

In *Curran,* a judgment of dismissal following sustaining of a demurrer was reversed, based in part on a determination that plaintiff's allegations reflected that defendant Boy Scouts had certain "businesslike attributes." (147 Cal.App.3d 712.)

[6] At least one commentator has suggested that the fact that organizations such as defendant operate on a basis of "fees" or "dues" makes it a business establishment in the realm of providing goods and services to its members. (See Schwartz, *The Unruh Civil Rights Act: Is A Private Club A Business Establishment After O'Connor v. Village Green Owners Ass'n?* (1984) 21 San Diego L.Rev. 477.)

## III.

### Interference with Protected Associational Rights of Private Clubs

■ Defendant vigorously argues, however, that not only is it exempted from the Act by reason of its "private" club status, but that attempted enforcement against it will impermissibly interfere with its right to discriminate in associations as guaranteed under the First Amendment as earlier interpreted by the United States Supreme Court. (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678], citing *Bell* v. *Maryland* (1964) 378 U.S. 226 [12 L.Ed.2d 822, 84 S.Ct. 1814].)

■ However, as defendant candidly acknowledges, the right to associational privacy is not without qualification (*Evans* v. *Newton* (1966) 382 U.S. 296 [15 L.Ed.2d 373, 86 S.Ct. 486]) and is subject to a balancing process. "The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." (*Roberts* v. *United States Jaycees* (1984) 468 U.S. 609, 623 [82 L.Ed.2d 462, 475, 104 S.Ct. 3244]; accord *Bd. of Dirs. of Rotary Int'l* v. *Rotary Club, supra,* 481 U.S. at p. 549 [95 L.Ed.2d at pp. 486-487, 107 S.Ct. at p. 1947] and *New York State Club Ass'n* v. *City of New York* (1988) 487 U.S. 1, 14, fn. 5 [101 L.Ed.2d 1, 17, 108 S.Ct. 2225, 2235].)[7]

As noted by the *Rotary Club* court: "The ill effects of discrimination against the individual as well as on society are well recognized. Our nation's Supreme Court in *Roberts* v. *United States Jaycees* (1984) 468 U.S. 609 [82 L.Ed.2d 462, 104 S.Ct. 3244], succinctly stated that it 'has frequently noted that discrimination based on archaic and overbroad assumptions about the relative needs and capacities of the sexes forces individuals to labor under stereotypical notions that often bear no relationship to their actual abilities. It thereby both deprives persons of their individual dignity and denies society the benefits of wide participation in political, economic, and cultural life.' (*Id.*, at p. 625 [82 L.Ed.2d at p. 476].)" (*Rotary Club of Duarte* v. *Board of Directors, supra,* 178 Cal.App.3d at p. 1062.)

In *Roberts,* the Supreme Court described two types of protected associational rights: intimate (family) relations and expressive. (*Roberts* v. *United States Jaycees, supra,* 468 U.S. at pp. 617-623 [82 L.Ed.2d at pp. 470-475].)

---

[7] *Rotary International* and *New York State Club Ass'n* v. *City of New York, supra,* 487 U.S. 1, were decided after the original briefing and argument. Submission was deferred to permit supplemental briefing as relevant to the issues herein.

In determining that Minnesota's requirement that the Jaycees' organization admit women as regular members did not abridge the members' expressive associational rights, the court at the same time expressed its concern over any laws that would operate as direct restraints on freedom of expression. (*Id.,* at p. 628 [82 L.Ed.2d at p. 478].) A similar two-part framework was adopted in assessing First Amendment claims raised in *Rotary International* and the facial attack on the New York City ordinance prohibiting discrimination by private clubs meeting the size and services criteria specified under the local law. In *Rotary International,* the court held that the application of business establishment criteria under the Act to Rotary International and the Duarte, California Rotary Club does not violate the members' First Amendment associational rights. (*Bd. of Dirs. of Rotary Int'l* v. *Rotary Club, supra,* 481 U.S. at p. 548 [95 L.Ed.2d at p. 486, 107 S.Ct. at p. 1948].)[8]

The associational rights defendant asserts are subject to the same kind of factual inquiry applicable to a determination of other defendants' privacy status. "Whether the 'zone of privacy' established by the First Amendment extends to a particular club or entity requires a careful inquiry into the objective characteristics of the particular relationships at issue. [Citations.]" (*Bd. of Dirs. of Rotary Int'l* v. *Rotary Club, supra,* 481 U.S. at p. 547, fn. 6 [95 L.Ed.2d at p. 486, 107 S.Ct. at p. 1947].) In the context of examining intimate associational rights, the *Roberts* court noted that "factors that may be relevant include size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." (468 U.S. at p. 620 [82 L.Ed.3d at p. 473].)

 Although defendant has consistently argued that its membership is selective and restricted,[9] plaintiff has also alleged that defendant's facilities are open to the public, at least in the form of guest use and rental. Of course, at this stage of the proceedings, there is no record proof that some membership applications are actually rejected under a selective screening process or that criteria other than financial ability are used. The crucially important issues of degree of exclusivity maintained and the nature of the intimate or expressive associational rights involved are matters properly subject to proof.

---

[8] The California Court of Appeal had identified several "businesslike attributes" of Rotary International (complex structure, large staff and budget, and extensive publishing activities) and the Duarte Club (receipt of Rotary publications, right to wear and display Rotary emblem and to attend conferences on managerial and professional techniques). (481 U.S. at pp. 542-543 [95 L.Ed.2d at p. 482, 107 S.Ct. at p. 1944].)

[9] Parenthetically, we note that the formal membership documentation submitted by defendant as part of its premature motion for summary judgment is not properly before us on this appeal.

In summary, in light of our analysis of the principles which apply, we conclude that plaintiff has properly alleged facts sufficient to state a cause of action for violation of the Unruh Civil Rights Act.

### IV.

### *Denial of Right to Fair Procedure and Due Process*

■ Plaintiff also contends the trial court erred in sustaining the demurrer to her cause of action alleging denial of her right to fair procedure and due process under both the common law and the California Constitution. Our review of the relevant decisional law supports plaintiff's basic contention.

Under the *Marinship-Pinsker* [10] line of cases, certain private entities are required to use fair procedure in excluding persons from membership because "[they] possess substantial power either to thwart an individual's pursuit of a lawful trade or profession, or to control the terms and conditions under which it is practiced." (*Ezekial* v. *Winkley* (1977) 20 Cal.3d 267, 272 [142 Cal.Rptr. 418, 572 P.2d 32].) Plaintiff alleged that, as a self-supporting real estate agent, she was dependent on the business she acquired, including significant contact sources through use of the club facilities. She further alleged that she received no notice of fair hearing before the termination of her valuable property interest in Peninsula Golf and Country Club.

Defendant replies that the right to fair procedure can only arise in the context of an organization holding a power of monopoly over a trade or profession, such as a labor union or a professional society. Defendant also contends no facts are alleged showing that denial of club membership adversely impacts plaintiff's fundamental right to pursue her chosen profession. Defendant further argues plaintiff lacks standing to assert a claim of arbitrary expulsion because she never possessed title to a club membership.

Although most of the recent decisions concerning the right to fair procedure have arisen in the context of trade union or professional membership claims,[11] the Supreme Court's language has been much broader in scope:

[10] *James* v. *Marinship Corp.* (1944) 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900] (closed shop trade union may not arbitrarily maintain closed membership) and *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253] (professional association under common law duty to employ fair procedure in denying application for membership).

[11] The right to fair procedure was originally held to apply to mutual benefit societies and other fraternal and social groups. (See, e.g., *Taboada* v. *Sociedad Espanola etc.* (1923) 191

"However, the application of the common law rule does not depend on the existence of 'monopoly' power. (E.g., *Ascherman II, supra,* 45 Cal.App.3d at p. 511 [availability of other nearby hospitals no bar to claim for wrongful denial of staff privileges]; *Ascherman I, supra,* 39 Cal.App.3d at p. 650, fn. 9 [same].) The judicial inquiry, rather, has consistently been focused on the practical power of the entity in question to affect substantially an important economic interest. Plaintiff has alleged such power in the matter before us." (*Ezekial* v. *Winkley, supra,* 20 Cal.3d at p. 277.) The *Ezekial* court also concluded: "The underlying theme of these [expulsion] decisions, variously stated, is that membership in an association, with its associated privileges, once attained, is a valuable interest which cannot be arbitrarily withdrawn. Thus, they comport with the broader principle that one on whom an important benefit or privilege has already been conferred may enjoy legal protections not available to an initial applicant for the same benefit. (See, e.g., *Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 146.)" (*Id.,* at p. 273; see *Curran* v. *Mount Diablo Council of the Boy Scouts, supra,* 147 Cal.App.3d at pp. 720-725.)

Viewing the allegations broadly, plaintiff possessed the *benefits and privileges* of membership in the club even though the certificate of membership was issued in the name of her former husband. Nor does defendant deny plaintiff's legal use of and access to the benefits and privileges of club membership before the marital dissolution.[12] The allegations raise viable factual issues concerning plaintiff's property interest in the club membership, purchased and maintained with community property funds and awarded to her as a community property interest under the integrated property settlement agreement.[13] Accordingly, the order sustaining the demurrer to the pleaded cause of action was erroneous.

## V.

### Other Causes of Action

Plaintiff's fifth and sixth causes of action purportedly allege claims of invasion of privacy (false light) and intentional infliction of emotional distress. We need only briefly discuss these additional claims.

---

Cal. 187, 191 [215 P. 673, 27 A.L.R. 1508]; *Von Arx* v. *San Francisco G. Verein* (1896) 113 Cal. 377, 379-380 [45 P. 685]; *Supreme Lodge, etc.* v. *L. A. Lodge No. 386* (1917) 177 Cal. 132, 136 [169 P. 1040].)

[12] We note from the amended pleadings that under the so-called "New By-laws," regular memberships previously held by women are "grandmothered" in, subject to a sex-based restriction upon sale. (§ 13.1.)

[13] In her brief on appeal, plaintiff fails to raise any due process claim grounded on the California Constitution as originally alleged in connection with her fair procedure claim. Accordingly, we consider the point abandoned and do not discuss it.

■ Plaintiff's single-paragraph argument in support of her privacy claims focuses on an "account" published in defendant's membership newsletter, which, she contends, had the effect of casting her in a false light in the public eye. The argument is unpersuasive.

The language of the California Supreme Court in discussing the nature of such privacy claims is peculiarly applicable herein: "Our courts have dealt with four distinct factual settings under the heading of invasion of privacy. . . . : (1) intrusion upon one's physical solitude or seclusion; (2) public disclosure of private facts; (3) false light in the public eye; and (4) appropriation. (*Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 35, fn. 16 [81 Cal.Rptr. 360, 459 P.2d 912]; Prosser, Law of Torts (4th ed. 1971) § 117, p. 804 et seq.

"Plaintiff claims through his allegations that private embarrassing facts about him were revealed and that his personal character was thereby injured. The allegations of the complaint [as here] might involve either the public disclosure of private facts branch or the false light branch of the tort. On appeal, plaintiff, while not labeling which branch of the tort he contends was committed, most clearly contends that there has been public disclosure of private facts. . . .

"Three required elements of the cause of action for public disclosure of private facts may be discerned from decisions of our courts. First, the disclosure of private facts must be a *public disclosure.* (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 828 [134 Cal.Rptr. 839]; *Timperley* v. *Chase Collection Service* (1969) 272 Cal.App.2d 697, 700 [77 Cal.Rptr. 782] (quoting Prosser, Law of Torts (3d ed. 1964) § 112, p. 835).) Second, the facts disclosed must be *private facts,* and not public ones. (*Kapellas* v. *Kofman, supra,* 1 Cal.3d 20, 35; *Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 323 [239 P.2d 876]; *Melvin* v. *Reid* (1931) 112 Cal.App. 285, 290 [297 P. 91].) Third, the matter made public must be one which would be *offensive* and objectionable to a reasonable [person] of ordinary sensibilities. (*Gill* v. *Hearst Publishing Co.* (1953) 40 Cal.2d 224 [253 P.2d 441]; *Samuel* v. *Curtis Pub. Co.* (N.D.Cal. 1954) 122 F.Supp. 327.)" (*Forsher* v. *Bugliosi* (1980) 26 Cal.3d 792, 808-809 [163 Cal.Rptr. 628, 608 P.2d 716].)

Here, the required threshold allegation of a general public disclosure is absent. Moreover, the anonymously worded statement contained in the newsletter cannot reasonably be construed as being "offensive and objectionable." Additionally, as a written communication to interested club members, the statement would appear to be privileged under the provisions of Civil Code section 47, subdivision 3.

■ Finally, we agree with defendant that plaintiff's attempt to allege a cause of action for intentional infliction of emotional distress is woefully

deficient. The several circumstances alleged surrounding the termination of the club membership do not rise to the level of "extreme and outrageous" conduct required to establish a valid tort claim. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498 [86 Cal.Rptr. 88, 468 P.2d 216]; *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].) In particular, the two communications relating to the membership termination, neither separately nor combined, could be reasonably viewed as so outrageous as to support a foreseeable claim of emotional injury.

### Disposition

We reverse the order or judgment of dismissal based upon the order sustaining demurrer as to plaintiff's causes of action alleging violation of the Unruh Civil Rights Act and denial of the right of fair procedure; in all other respects, the order sustaining demurrer is affirmed. ██ The parties shall bear their own costs on appeal.[14]

Newsom, J., and Holmdahl, J., concurred.

A petition for a rehearing was denied November 20, 1989, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 25, 1990. Lucas, C. J., was of the opinion that the petition should be granted.

---

[14] We reject plaintiff's complaint that the trial court erred in dissolving the preliminary injunction while sustaining the demurrer and granting judgment accordingly. Since the pending matter was finally determined in favor of defendant, the injunction dissolved even without the necessity of formal motion. (*City of Oakland* v. *Superior Court* (1982) 136 Cal.App.3d 565, 569 [186 Cal.Rptr. 326].) Whether and to what extent the injunction should be reinstated upon remand is a matter committed to the discretion of the trial court following an evidentiary hearing. (*Id.,* at pp. 569-570; see also *Jeneski* v. *Myers* (1984) 163 Cal.App.3d 18, 28 [209 Cal.Rptr. 178], cert. den. *sub nom. Kizer* v. *Jeneski* (1985) 471 U.S. 1136 [86 L.Ed.2d 695, 105 S.Ct. 2677].)