[No. A047594. First Dist., Div. Three. Apr. 16, 1991.]

OLYMPIC CLUB, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
CITY AND COUNTY OF SAN FRANCISCO et al., Real Parties in
Interest.

COUNSEL

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Robert F. Kane, Paul D. Herbert and Robert P. Andris for Petitioner.

No appearance for Respondent.

Louise H. Renne, City Attorney, Dennis Aftergut, George A. Riley, G. Scott Emblidge and Andrew W. Schwartz, Deputy City Attorneys, for Real Parties in Interest.

OPINION

**STRANKMAN, J.**—The Olympic Club (hereinafter the Club), founded in 1860 for "white male citizens of the United States of good moral character, integrity and reputation," owns sports, dining, and residential facilities in San Francisco. It is being sued by the City and County of San Francisco (hereinafter the City) for an injunction against membership policies and practices which are said to discriminate based on sex and race. The City alleges violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.)

(hereinafter the Act) and a local antidiscrimination ordinance and breach of a golf course lease agreement with the City which requires the Club to abide by applicable law.

In an effort to investigate its claims of racial discrimination, the City asked the Club for a list of names and business addresses of the 41 applicants who were rejected for membership in the Club between 1980 and 1989. The Club resisted, asserting the privacy rights of the rejected applicants. This petition challenges a court ruling which requires that the Club turn over names and addresses under the protection of an order preventing the City from divulging this information. ■ ■ ■ We conclude that the order was within the court's discretion, but that the court erred in failing to require prior notice to and opportunity for individual rejected applicants to object to disclosure. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 658 [125 Cal.Rptr. 553, 542 P.2d 977].)[1]

*The Right of Associational Privacy*

■ The right of associational privacy is well established by decisions of the United States Supreme Court and the California Supreme Court. "[N]umerous cases establish that compelled disclosure of an individual's private associational affiliations and activities . . . frequently poses one of the most serious threats to the free exercise of [the constitutional right of association]." (*Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 852 [143 Cal.Rptr. 695, 574 P.2d 766].) "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective . . . restraint on freedom of association . . . ." (*N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449, 462 [2 L.Ed.2d 1488, 1499, 78 S.Ct. 1163].) Contrary to the City's assertion, associational privacy rights are not limited to associations that are " 'politically oriented' " or " 'advocacy organizations.' " "Forms of 'association' have been protected that are not political in the customary sense but pertain to the social, legal, and economic benefit of the members. [Citation.]" (*City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259, 267 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]; *Church of Hakeem, Inc.* v. *Superior Court* (1980) 110 Cal.App.3d 384, 387-388 [168 Cal.Rptr. 13].)

Associational privacy rights extend to applications for membership. The right to apply for membership without governmental scrutiny is a natural

---

[1] During oral argument in this court, the Club asserted that racial discrimination was no longer in issue because the Club now has some Black members. The City countered by noting its request for an injunction against future racial discrimination. We agree with the City. Had the Club stipulated to an injunction against future racial discrimination the issue might be moot. But the belated admission of a few Black members does not moot the issue.

adjunct to the right of associational privacy. Government access to lists of applicants could as easily threaten associational freedom as could access to an organization's membership list. Although seeking a list of only those refused membership presents less threat than seeking a list of all applicants or of all members, it still could inhibit some from applying for membership.

The California Supreme Court has explained that an "intrusion into associational privacy may be sanctioned only upon the demonstration of a very important, indeed 'compelling,' state interest which necessitates the disclosure. Moreover, the authorities additionally demonstrate that even when such justification is present, the scope of the compelled disclosure must be narrowly circumscribed to avoid undue interference with private associational rights." (*Britt* v. *Superior Court, supra*, 20 Cal.3d at pp. 848-849.)

*The City's Need for the Information*

■ The City justifies its intrusion into the associational privacy interests of the rejected applicants by explaining that evidence from these people may help the City prove its case against the Club. According to the City, learning the names of the rejected applicants will assist it in proving two things: (1) a pattern of racial bias, and (2) that the Club is not the kind of truly selective private organization whose membership policies may be exempt from scrutiny. (See *Warfield* v. *Peninsula Golf & Country Club* (1989) 214 Cal.App.3d 646, 657 [262 Cal.Rptr. 890].)

Turning first to the second justification, we fail to see why the City needs the names and addresses of rejected applicants in order to determine how selective the Club is in its membership practices. The Club has already shown that less than 3 percent of all applicants have been rejected during the period subject to the discovery request. Interviewing the rejected members about their perceptions of the process can add little to any showing of selectivity, which would be better shown by testimony from members of the selection committee.

In contrast, the City needs to investigate whether there has been a pattern of racial bias. So far, the City's evidence of recent racial bias has been anecdotal. The City knows that until 1968 the Club's bylaws restricted membership to "white male citizens of the United States." During depositions, the City learned that although the bylaws were changed in 1968, no Black members were added until the lawsuit was filed in 1987. Out of some 4,700 active Club members, somewhere between 3 and 6 are Black. Although a Black man with demonstrated athletic talent was made an "athletic contributing member" and played on the Club's championship

teams in the 1960's, his application for active membership was rejected by the Club.

The Club argues that the City does not need to seek evidence from the rejected applicants because it already purports to have some evidence of a policy of racial discrimination. We note, however, that the Club does not admit that racial discrimination continued after the bylaws were changed. In fact, it concedes only that the City "purports" to have evidence of discrimination against minorities. Absent an admission by the Club, or the City's possession of compelling evidence, we cannot say that the City must terminate its search for further proof of its allegations. The City has a palpable need to discover whether the rejected applicants were barred from the Club because of race. Unless members of the Club's selection committee admit that they rejected applicants on racial grounds, contact with the rejected applicants is a necessary first step to determining whether race may have influenced the Club's decisions.

In ordinary civil litigation, a plaintiff's need for information will not easily override a third party's privacy rights. (See *City & County of S. F.* v. *Superior Court* (1951) 38 Cal.2d 156, 163 [238 P.2d 581]; *Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 530 [174 Cal.Rptr. 160].) Thus, in *Church of Hakeem, Inc.* v. *Superior Court, supra*, 110 Cal.App.3d at page 390, we held that the church's membership list should be protected. Plaintiffs were relegated to newspaper announcements or word of mouth for seeking other potential plaintiffs. The Club argues for a similar result here—for the City to use the media to ask willing rejected applicants to assist by coming forward voluntarily.

But this action is not ordinary civil litigation. The Act codifies fundamental principles of our society: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51.) The Act specifically empowers the city attorney to bring an action for "injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights" secured by the Act. (Civ. Code, § 52.1, subd. (a).)

By authorizing the city attorney to bring actions on behalf of the People of the State of California, the Legislature has signaled that enforcement of the law should not depend upon willingness of individual victims of discrimination to come forward. Indeed, individual victims may well be

reluctant to become involved in such actions for reasons that spring from the very practice of discrimination. The city attorney may be prevented from properly carrying out her mandate to protect the rights secured by the Act if she can contact only those possible victims who respond to media requests to come forth.

*Balancing the Interests*

We find that the City has a strong need for the names and business addresses of the rejected applicants. As we noted above, rejected applicants have important associational privacy rights. These interests must be balanced against each other. (See *Wilkinson* v. *Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1046 [264 Cal.Rptr. 194].) We conclude that the balance here favors disclosure provided that the lower court properly protects the rejected applicants from disclosure of their identity beyond the lawsuit and permits them to apply for such further protections as they consider appropriate.

*Notification Before Disclosure*

█ One way to minimize the risks of unwarranted disclosure of private information is for the Club first to notify the rejected applicants and permit them to apply to the court for protection from disclosure of their identities to the City. In that way, the court could screen the objecting applicants and withhold the names of those who were clearly not rejected based on race. The Club asked the court below to use a variant of this procedure, but the court found it unnecessary. The court's written order explained that "[a]s no personal or financial records of these individuals are involved, the Club is not required to give prior 'notice' pursuant to *Valley Bank of Nevada* v. *Superior Court* [*supra*, 15 Cal.3d 652] . . . ."

In *Valley Bank of Nevada*, the plaintiff bank objected to disclosure to defendants of banking records of some of its customers. The Supreme Court ruled that "before confidential customer information may be disclosed in the course of civil discovery proceedings, the bank must take reasonable steps to notify its customer of the pendency and nature of the proceedings and to afford the customer a fair opportunity to assert his interests by objecting to disclosure, by seeking an appropriate protective order, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Valley Bank of Nevada* v. *Superior Court*, *supra*, 15 Cal.3d at p. 658.)

The Supreme Court approved an alternative approach in *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785 [183 Cal.Rptr. 810,

647 P.2d 86]. There, the plaintiff in a bad faith action against an insurance company sought names, addresses, and records of other claimants whose cases were handled by a particular claims adjuster. The superior court required that a letter be sent to the other claimants and barred plaintiff's counsel from contacting any who did not respond to the letter. The Supreme Court upheld that procedure. (*Id.*, at pp. 789, 794-795.)

Given the strong public policy to eradicate racial discrimination expressed by the Act, a *Colonial Life* approach is not warranted in this case. The City should not be prevented from contacting those rejected applicants who do not volunteer to speak to the City. But the trial court erred in failing to require notice in accordance with *Valley Bank of Nevada*. Nothing in *Valley Bank of Nevada* limits its scope to attempts to obtain "personal or financial" records. The rejected applicants' associational privacy interests deserve at least as much protection as their interests in financial records.

The Club argues that even with a confidentiality order some rejected applicants will be thrust into the public eye when they are required to testify at trial or their depositions are introduced into evidence. In this assertion, the Club may be correct. Applicants who may have been rejected because of their race could be required to make their rejections public. Their sensibilities to publicity may have to yield to the public's interest in arresting institutional racism. But unless the City were to misuse discovered evidence or the court were to wrongfully refuse to protect rejected applicants from unwarranted public attention, this exposure, however painful, would be permissible. We cannot assume either misuse by the City or erroneous future rulings by the court.

*Conclusion*

The trial court should require the Club to send a letter to rejected applicants informing them that the City is seeking to contact them about their applications and advising them to petition the court for protective orders if they seek anonymity. Through this device, the court can limit disclosure to those who do not object to talking to the city attorney and, among those applicants unwilling to talk voluntarily, to those who might have been rejected on racial grounds. Those who successfully seek protective orders will be removed from the list of names and addresses furnished by the Club to the City.

Let a peremptory writ of mandate issue directing the San Francisco Superior Court to vacate its order requiring production without notification

and to enter a new order establishing notification procedures consistent with the views stated herein.

White, P. J., and Chin, J., concurred.

Petitioner's application for review by the Supreme Court was denied July 11, 1991.