[No. H008251. Sixth Dist. Feb. 24, 1992.]

CITY OF LOS ALTOS, Plaintiff and Respondent, v.
VIRGINIA BARNES, Defendant and Appellant.

**COUNSEL**

Alexander T. Henson for Defendant and Appellant.

Atkinson & Farasyn and Robert K. Booth, Jr., for Plaintiff and Respondent.

**OPINION**

**ELIA, J.**—The City of Los Altos (City) successfully enjoined Virginia Barnes from carrying on a home occupation at her Los Altos residence. On appeal, Barnes challenges the constitutionality of the Los Altos zoning ordinance, and contends the trial court failed to consider the hardships a preliminary injunction would impose upon her and her business. For reasons we shall explain, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

Barnes owns a single family home at 1485 Redwood Drive in Los Altos. Barnes also owns and operates Montecito-Sequoia, a recreational family camp located in Tulare County in the Sequoia National Forest.

Barnes completes certain camp-related tasks at her Los Altos residence. These tasks include typing, answering the telephone, filing, organizing fliers, and entering data into the computer. For the last 17 years, Barnes has employed Judy Vincent to help her with this work. On occasion, she also

employs others to assist her. Although these individuals work at 1485 Redwood Drive, they do not reside at that address.

Barnes's residence is zoned R-1. Home occupations[1] are permitted in R-1 zones so long as certain requirements are met. A home occupation must be "[a]n occupation carried on in a home provided no assistants are employed and provided such use is conducted within a dwelling and carried on by the occupants of the property, and is clearly incidental to the residential use of the dwelling, and does not change the residential character or appearance of the dwelling, or adversely affect the uses permitted in the residential district of which it is a part, . . ." (§ 10-2.201 (aq) of the Los Altos Mun. Code.)

On October 4, 1989, the City filed suit to enjoin Barnes from violating the City's zoning ordinance. The trial court issued the preliminary injunction, stating, "Preliminary injunction is issued to VIRGINIA BARNES's residence located at 1485 Redwood Drive, Zoned R-1. Occupation activity is prohibited in the home where it involves non-resident [sic] persons who are compensated for work performed and or assistance rendered directly related to the occupation of Ms [sic] Barnes as owner and operator of a recreation camp. Example [sic] of such work and assistance is [sic] folding camp[-]related brochures, answering telephone related to camp business, entering data into computer for camp business. Statute or ordinance is to be construed so as to be constitutional."

This appeal ensued.

DISCUSSION

I. COURT'S ORDER

Barnes contends the trial court did not apply the correct test in determining whether to grant the injunction. In particular, she alleges that the court's order does not indicate that it considered the hardships an injunction would impose upon her and her business. Before addressing this contention, we first set out the applicable law.

---

[1]The full definition of home occupation is "[a]n occupation carried on in a home provided no assistants are employed and provided such use is conducted within a dwelling and carried on by the occupants of the property, and is clearly incidental to the residential use of the dwelling, and does not change the residential character or appearance of the dwelling, or adversely affect the uses permitted in the residential district of which it is a part, and wherein no product, other than those produced on the premises, is sold and no mechanical equipment is used, other than that necessary for domestic purposes, and where there is no indoor or outdoor storage of materials, equipment, and/or supplies, other than those necessary for domestic purposes." (§ 10-2.201 (aq) of the Los Altos Mun. Code.)

■ If a city seeks to enjoin an ordinance violation and the ordinance specifically provides for injunctive relief, then the city must first establish that it is reasonably probable that it will prevail on the merits. Once that is established, "a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant." (*IT Corp.* v. *County of Imperial,* (1983) 35 Cal.3d 63, 72 [196 Cal.Rptr. 715, 672 P.2d 121], fn. omitted.)

If the defendant demonstrates that the preliminary injunction would result in grave or irreparable harm, then the injunction should be granted only after the trial court considers "(1) the degree of certainty of the outcome on the merits, and (2) the consequences to each of the parties of granting or denying interim relief . . . . At this stage of the analysis, no hard and fast rule dictates which consideration must be accorded greater weight by the trial court. For example, if it appears fairly clear that the [city] will prevail on the merits, a trial court might legitimately decide that an injunction should issue even though the [city] is unable to prevail in a balancing of the probable harms." (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at pp. 72-73.)

■ In this case, the trial court's order simply sets forth a cursory summary of its decision. It does not describe the court's reasoning and does not indicate whether the court applied the foregoing analysis in concluding the injunction should issue. Although Barnes argues this is error, we must disagree.

First, the fact that the court's conclusion is set forth in summary fashion does not mean the court failed to engage in the requisite analysis, or that its analysis was incorrect. It simply means we are unable to determine what analysis was utilized.

Second, Barnes did not request a statement of decision, and even if she had, the trial court was not obligated to provide one. (*People* v. *Landlords Professional Services, Inc.* (1986) 178 Cal.App.3d 68 [223 Cal.Rptr. 483].) In *People* v. *Landlords Professional Services, Inc.* the court concluded a statement of decision was not required when a preliminary injunction was granted. In that case, defendants requested a statement of decision, but the trial court refused to issue one. On appeal, the court reasoned that Code of Civil Procedure section 632 authorized statements of decisions upon " 'the *trial* of a question of fact by the court . . . .' " (178 Cal.App.3d at p. 70, italics added.) Because a hearing on a preliminary injunction was not the equivalent of a trial, the court determined that a statement of decision was not required.

■ Having concluded there was no impropriety in the court's failure to set forth its reasoning in a statement of decision, we next consider whether

the trial court abused its discretion in issuing the preliminary injunction. It is settled that the decision to grant a preliminary injunction is within the discretion of the trial court. (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at p. 69; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].) A trial court abuses its discretion only if it has " 'exceeded the bounds of reason or contravened the uncontradicted evidence.' " (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 527, quoting *Estate of Parker* (1921) 186 Cal. 668, 670 [200 P. 619]; see also *IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at p. 69.) It is the burden of the party challenging the injunction to make a clear showing that the court's discretion has been abused. (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at p. 69.)

As previously noted, we must consider whether it is reasonably probable that the City would prevail on the merits. In this regard, we note that Barnes in effect concedes the ordinance violation. She admits that she pays individuals to perform camp-related tasks, and that those individuals perform the tasks at the Los Altos address although they do not reside at her home. Accordingly, there is a rebuttable presumption that the potential harm to the public from the infraction outweighs any harm to Barnes. (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at pp. 69-70.)

Assuming that there was evidence that Barnes would suffer grave or irreparable harm from a preliminary injunction, and assuming there was evidence that Barnes could prevail in the balancing of the harms, we nonetheless conclude that no abuse of discretion occurred. "[I]f it appears fairly clear that the [city] will prevail on the merits, a trial court might legitimately decide that an injunction should issue even though the [city] is unable to prevail in a balancing of the probable harms." (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at pp. 72-73.) In sum, we conclude that the trial court did not abuse its discretion.

## II.  PRIVACY AND ASSOCIATION RIGHTS

We turn to the constitutionality of the Los Altos zoning ordinance. Barnes argues it is unconstitutional because it (1) violates her rights of privacy; (2) infringes upon her free association rights; and (3) is impermissibly vague.

We begin with the right of privacy and free association. " 'The right to privacy is the right to be left alone. It is a fundamental and compelling interest. It protects our homes, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion and our freedom to associate with the people we choose. . . .' " (*White* v. *Davis*

(1975) 13 Cal.3d 757, 774-775 [120 Cal.Rptr. 94, 533 P.2d 222]; see also *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].) The United States Supreme Court "has recognized the vital relationship between freedom to associate and privacy in one's associations. . . . Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association . . . ." (*N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449, 462 [2 L.Ed.2d 1488, 1499-1500, 78 S.Ct. 1163]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 853 [143 Cal.Rptr. 695, 574 P.2d 766].)

■ Because these are fundamental rights, (see *Griswold* v. *Connecticut* (1965) 381 U.S. 479, 484-486 [14 L.Ed.2d 510, 514-516, 85 S.Ct. 1678]; *N.A.A.C.P.* v. *Alabama, supra,* 357 U.S. at pp. 460-461 [2 L.Ed.2d at pp. 1498-1499]) Barnes argues the ordinance is not presumed valid. She contends the City has the burden of demonstrating that the infringement upon constitutional rights is necessary to meet a compelling public need and that the ordinance is the least intrusive means of meeting that need. (See *Moore* v. *East Cleveland* (1977) 431 U.S. 494, 499 [52 L.Ed.2d 531, 537-538, 97 S.Ct. 1932]; *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 213 [211 Cal.Rptr. 398, 695 P.2d 695].)

Barnes relies upon *City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d 123; *Britt* v. *Superior Court, supra,* 20 Cal.3d 844; and *Olympic Club* v. *Superior Court* (1991) 229 Cal.App.3d 358 [282 Cal.Rptr. 1].)

In *City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d 123, the Supreme Court struck down an ordinance because it violated the right of privacy. The ordinance required that occupants be members of a "family" and defined "family" as an individual or two or more persons related by blood, marriage, or legal adoption or a group of not more than five persons. The court held that there was no nexus between the "rule of five" and the city's goal of maintaining residential character. " 'The fatal flaw in attempting to maintain a stable residential neighborhood through the use of criteria based upon biological or legal relationships is that such classifications operate to prohibit a plethora of uses which pose no threat to the accomplishment of the end sought to be achieved. . . . As long as a group bears the "generic character of a family unit as relatively permanent household," it should be equally as entitled to occupy a single family dwelling as its biologically related neighbors.' " (*Id.* at p. 134, quoting from *State* v. *Baker* (1979) 81 N.J. 99 [405 A.2d 368, 371-372]; see also *Ewing* v. *City Of Carmel-by-the Sea* (1991) 234 Cal.App.3d 1579 [286 Cal.Rptr. 382].)

In *Olympic Club* v. *Superior Court, supra,* 229 Cal.App.3d 358, a city filed suit against a private club alleging racial and sexual discrimination. As

part of its investigation, the city asked for the names and business addresses of rejected membership applicants. The club protested, asserting the privacy rights of the applicants. The appellate court held that the city's interest in obtaining the information outweighed the privacy rights of the applicants. However, the court also conceded that the applicants were entitled to be notified before their names were divulged so that they could seek to keep their names confidential.

In *Britt* v. *Superior Court, supra,* 20 Cal.3d 844, homeowners sued a public agency for injuries caused by noise, smoke, vibrations, and pollution from a nearby airport. Defendant sought extensive discovery of the homeowners' political activities, including membership in organizations, meetings attended, and content of discussion. Defendant also requested the homeowners' medical histories. Although the trial court authorized disclosure, the homeowners' mandamus petition was granted to prevent enforcement of the order.

The facts in *City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d 123, *Britt* v. *Superior Court, supra,* 20 Cal.3d 844, and *Olympic Club* v. *Superior Court, supra,* 229 Cal.App.3d 358 differ sharply from the circumstances here. In all those cases, the government sought to intrude into private areas of individual lives. In *City of Santa Barbara, supra,* 27 Cal.3d 123, the ordinance governed with whom residents could reside. In *Britt* v. *Superior Court, supra,* 20 Cal.3d 844, and *Olympic Club* v. *Superior Court, supra,* 229 Cal.App.3d 358, public entities sought disclosure of information about individuals' activities, including with whom they associated, what meetings they attended, and what topics they discussed. The Los Altos ordinance, by contrast, does not intrude into Barnes's private affairs. It does not regulate with whom she resides, inquire into whom she employs or force her to divulge information about whom her associates are. All the ordinance does is regulate the use of her home. In particular, the ordinance places limits upon the use of her residence for commercial purposes. As we emphasized in *Ewing* v. *City of Carmel-by-the-Sea,* " '*In general, zoning ordinances are much less suspect when they focus on the use than when they command inquiry into who are the users.*' " (*Ewing* v. *City of Carmel-by-the-Sea, supra,* 234 Cal.App.3d at p. 1598, quoting *City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d at p. 133, italics in original.) Because the ordinance does not seek to regulate any aspect of Barnes's private life, and does not dictate with whom she resides, works, or associates, it does not violate her constitutionally protected rights of privacy or association.

Barnes also argues the ordinance was unconstitutionally applied. She contends that one of her neighbors "spied" on her and videotaped her activities to establish that she was violating the ordinance. Even if this were

true, these circumstances do not give rise to a constitutional claim. First, the allegations are insufficient to establish that the *City* has invaded Barnes's privacy in seeking to enforce the ordinance. Second, it appears that her neighbor observed conduct occurring in plain view. It is alleged that the neighbor conducted "daily" observations, videotaped vehicles being moved, and wrote down vehicle license plate numbers. However, anyone could have witnessed these same activities. They were not conducted in secret or in any way shielded from public view. Accordingly, in these circumstances the ordinance was not applied so as to violate Barnes's rights of privacy or freedom of association.

### III. VAGUENESS

We next consider whether the ordinance is void for vagueness. Indeed, "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]; see also *Ewing* v. *City of Carmel-by-the-Sea, supra*, 234 Cal.App.3d at p. 1594.)

A vague law is offensive for several reasons. "First, the person of ordinary intelligence should have a reasonable opportunity to know what is prohibited. A vague law may trap the innocent by not providing fair warning. Second, a vague law impermissibly delegates the legislative job of defining what is prohibited to [the police], judges, and juries, creating a danger of arbitrary and discriminatory application. Third, a vague law may have a chilling effect, causing people to steer a wider course than necessary in order to avoid the strictures of the law." (*Ewing* v. *City of Carmel-by-the-Sea, supra*, 234 Cal.App.3d at p. 1594, citing *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].)

On the other hand, "we can never expect mathematical certainty from our language." (*Grayned* v. *City of Rockford, supra*, 408 U.S. at p. 110 [33 L.Ed.2d at pp. 228-229], fn. omitted.) In interpreting a zoning ordinance, we may refer to "(1) long established or commonly accepted usage; (2) usage at common law; (3) judicial interpretations of the statutory language or of similar language; (4) legislative history or purpose." (*Sechrist* v. *Municipal Court* (1976) 64 Cal.App.3d 737, 745 [134 Cal.Rptr. 733]; *Ewing* v. *City of Carmel-by-the-Sea, supra*, 234 Cal.App.3d at p. 1594.)

Barnes contends the ordinance is vague in two respects. First, she questions the clarity of "occupation carried on at home." She contends this

phrase has never been officially defined. Although this may be so, the absence of an official definition does not necessarily mean the phrase is vague. Reference to commonly accepted usage, coupled with judicial interpretation of similar language, establishes what these terms mean.

Webster's New Collegiate Dictionary (9th ed. 1988) defines "occupation" as, among other things, "the principal business of one's life." (*Id.* at p. 817.) Black's Law Dictionary (5th ed. 1983) speaks of "one's regular business or employment." (*Id.* at p. 558.) Indeed, the term "occupation" is not a mysterious one, or a word infrequently used as part of our language.

Furthermore, Barnes contends the phrase "provided no assistants are employed" is vague. Again, we must disagree. The terms "assistants" and "employed" are clear, specific, and subject to common usage. We are confident that a person of reasonable intelligence would not have any difficulty understanding what these words mean.

Barnes lists several hypotheticals in an attempt to show the ordinance is vague. For example, she wonders whether ordinance violations would occur if (1) a schoolteacher invites his students over once a week; (2) a newspaper delivery person received papers for delivery at her home; (3) an attorney uses a home computer to perform law-related work. We think Barnes is attempting to inject confusion into a relatively clear area. These examples do not violate the statute. First, the examples cited, unlike the situation here, do not involve the employment of assistants. In addition, we doubt a newspaper delivery person is engaging in a home occupation as that term is commonly understood.

Barnes also points out that there is nothing in the ordinance to distinguish domestic employees, such as cooks, gardeners, or maids, from assistants who type, file, or mail brochures. On the contrary, cooks, gardeners, and maids perform a service for homeowners unrelated to any occupation being conducted in the home. There is a fundamental difference between hiring individuals to perform services to enhance a home, and therefore its residential character, and hiring assistants to facilitate a commercial enterprise being conducted on the premises. Domestic employees provide services related to the home itself, and do not assist the homeowner with a separate occupation or business. The upkeep of one's own home, no matter how difficult, cannot be considered a homeowner's "occupation."

Barnes argues her use did not adversely impact upon her neighborhood, and therefore she claims it does not violate the spirit of the ordinance. Barnes suggests the ordinance be revised to prohibit "all activities which

adversely impact residential character." Again, we must disagree. Given that Barnes contends the present ordinance is vague, we wonder how she can assert that this revision is specific enough to pass constitutional muster. The revision would require ad hoc decisions about what activities "adversely impact" the neighborhood. In effect, it would "impermissibly [delegate] the legislative job of defining what is prohibited to [the police], judges, and juries, creating a danger of arbitrary and discriminatory application." (*Ewing* v. *City of Carmel-by-the-Sea, supra,* 234 Cal.App.3d at p. 1594, citing *Grayned* v. *City of Rockford, supra,* 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228].)

The present ordinance, by contrast, is specific about what it prohibits. There is also a close connection between its limit on home occupations and the City's goal of maintaining the residential character of the neighborhood. The ordinance ensures that a home occupation does not transform a residential neighborhood into a commercial one. By requiring that the occupation be carried on in the home, the ordinance guarantees that the neighborhood remains primarily a place where people reside, as opposed to a place where they do business. Prohibiting the employment of assistants furthers this same goal. The daily coming and going of business employees, with the attendant traffic and parking problems, impacts upon the stability and tranquility of a neighborhood. Unlike those employed for domestic reasons, these individuals do not visit the neighborhood to enhance its residential character; they visit only for commercial purposes, and for reasons unrelated to the home itself. In short, the ordinance is designed to make sure the home, and not the occupation, remains the integral characteristic of the community.

In *County of Butte* v. *Bach* (1985) 172 Cal.App.3d 848 [218 Cal.Rptr. 613], the court interpreted an ordinance which limited home occupation use to "members of the family residing on the premises." In that case, an attorney used a house in an R-1 zone as a law office. He employed his wife and another individual to assist him with his practice, and sometimes spent the night at the house. In rejecting his argument that he "resided" at the premises, the court emphasized, "The purpose of the limitation of the right to conduct a home occupation to persons who 'reside' on the premises is to limit encroachment of commercial users on the residential zone. The meaning of reside must be consonant with this purpose. The meaning proposed by [attorney] is so elastic that one could make full-time commercial use of a residence under the home occupation provision of the ordinance based upon any part-time occupancy for noncommercial use . . . ." (*Id.* at p. 865.)

In *Jones* v. *Robertson* (1947) 79 Cal.App.2d 813 [180 P.2d 929], a real estate broker maintained an office in his residence. The zoning ordinance

permitted uses *customarily* incidental to and subordinate to residential use. Home occupations, professional offices, and studios maintained within the dwelling were permitted. Stores, shops, or other commercial enterprises were not. In determining that the broker was violating the ordinance, the court rejected his claim that he was practicing a profession, and that the use was merely incidental to the residential use of his home. (*Id.* at pp. 816-818.)

In *City of Beverly Hills* v. *Brady* (1950) 34 Cal.2d 854 [215 P.2d 460], an ordinance prohibited conducting business in a residential zone. Defendant, a physician and author of a syndicated column, completed tasks relating to the column at his home. He received and mailed pamphlets, built a room over his garage fitted with shelves, filing cabinets, desks, and typewriters, and hired secretaries to assist him with the column. It was agreed that these activities did "not interfere with the use or appearance of his home or premises as a residence, nor do they affect the residential or aesthetic character of the district." (*Id.* at p. 856.)

The court concluded defendant's activities did not amount to conducting *business*. It noted that the mailing of the pamphlets was merely incidental to the writing of the column, that the pamphlets were not independently advertised, and that defendant was not in the business of selling or publishing the pamphlets for profit.

Both *County of Butte* v. *Bach, supra,* 172 Cal.App.3d 848 and *Jones* v. *Robertson, supra,* 79 Cal.App.2d 813 recognize the validity of local ordinances limiting home occupations in residential neighborhoods. In *County of Butte,* the court emphasized, "[a] home occupation exception to residential zoning use restrictions is an accommodation between the values fostered by those restrictions and the conflicting value served by permitting a person the liberty to conduct economic activity in his home. [Citation.]" (172 Cal.App.3d at p. 865.) In *City of Beverly Hills* v. *Brady, supra,* 34 Cal.2d at page 856, the court recognized that "[t]he zoning restrictions are intended to retain the highest residential and aesthetic value to the property owners and the district." Although the physician was allowed to continue the challenged activity in *City of Beverly Hills,* that case is distinguishable. In *City of Beverly Hills,* unlike the present case, the ordinance did not prohibit the physician from hiring employees to assist in the business.

People have long used their residences as places in which to work as well as live. Zoning ordinances recognize this by permitting home occupations subject to certain restrictions. These restrictions have been crafted to ensure that the occupation remains unobtrusive and does not detract from an otherwise residential neighborhood. In this respect, ordinances restricting

home occupations represent a compromise between removing incompatible commercial use from residential neighborhoods and the social necessity of permitting some home occupations to continue. (See Anderson, American Law of Zoning 2d (1976) §§ 13.01-13.02, pp. 508-511.)

Los Altos has chosen to balance these interests by enacting a zoning ordinance which permits home occupations subject to certain limits. In particular, the occupation must be carried on in the home, assistants cannot be employed, the use must be incidental to the residential use, and the use cannot change the residential character or appearance of the home. Although there will no doubt be instances in which these restrictions seem harsh when applied to a particular situation, we believe they represent a reasonable compromise between the competing interests at stake. We recognize that some home occupation ordinances permit nonresident employees to assist the homeowner. (See e.g., Anderson, American Law of Zoning 2d, *supra*, §§ 13.21-13.22, pp. 539-540.) Nonetheless, Los Altos has chosen not to make this accommodation and, as we recognized in another context, this type of "[l]ine drawing is the essence of zoning. Sometimes the line is pencil-point thin—allowing, for example, plots of one-third acre but not one-fourth[,] buildings of three floors but not four, beauty shops but not beauty schools. . . . Nonetheless, the line must be drawn, and the legislature must do it. Absent an arbitrary or unreasonable delineation, it is not the prerogative of the courts to second-guess the legislative decision." (*Ewing* v. *City of Carmel-by-the-Sea, supra*, 234 Cal.App.3d at p. 1593.)

In sum, we conclude that the challenged ordinance is constitutional and that the trial court did not abuse its discretion in issuing the preliminary injunction. The judgment is affirmed.

Agliano, P. J., and Cottle, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 1992.