COPY

Filed 4/8/14  Roybal v. GSC Logistics CA1/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RITA ROYBAL,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>GSC LOGISTICS, INC., et al.,<br><br>   Defendants and Appellants. | A139236<br><br>(Alameda County<br>Super. Ct. No. RG12633149) |

Defendants GSC Logistics, Inc. (GSC) and StaffChex, Inc. (StaffChex) appeal from an order denying their motion to compel arbitration under a contractual provision for binding arbitration.  They contend the trial court erred in deciding that defendants, who were not signatories to a contract containing an arbitration provision but were originally sued along with another party who was a signatory, may not compel the other signatory party, plaintiff Rita Roybal, to arbitrate the controversies raised in her complaint.  We affirm the order.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 5, 2012, plaintiff filed a complaint against Select Staffing (Select), GSC, and StaffChex.  The complaint alleges the following:

In August 2010, plaintiff was hired by a temporary staffing agency named Accountability.  She was placed as a warehouse worker at GSC's cross-dock and transload facility.

On May 26, 2011, GSC entered into an agreement with Select in which Select was to replace Accountability as one of its staffing agencies. The agreement does not contain an arbitration clause. Instead, both parties agreed that "any dispute or claim that arises under this Agreement would be settled by the Superior Court of California for Alameda County."

In July 2011, plaintiff was told that Accountability was being eliminated, but that she would nonetheless be retained by GSC through the new staffing agency, Select.

On August 4, 2011, plaintiff signed an employment agreement with Select, which contained the following language pertaining to arbitration: "If the Employer and I are unable to resolve any dispute informally, I agree to having the dispute submitted and determined by binding arbitration in conformity with the procedures of the Federal Arbitration Act and the California Arbitration Act . . . ."

Beginning in early August 2011, plaintiff was repeatedly verbally accosted and sexually harassed by a StaffChex employee, Gerardo Gonzalez. StaffChex, like Select, is a temporary staffing agency that placed workers at the GSC warehouse. The harassment went on for several months until October 12, 2011, when Gonzalez sexually assaulted her by forcibly placing her hand on his penis. Plaintiff immediately informed her Select supervisor of the incident, which resulted in Gonzalez's suspension. On October 17, 2011, plaintiff was informed that Gonzalez was being allowed to return to work. Defendants refused to move Gonzalez to a different shift, and plaintiff became fearful that his harassment would continue. She did not return to her job.

The complaint alleges five separate causes of action under California's Fair Employment and Housing Act (Gov. Code, § 12940 et seq.; FEHA): Two causes of action for hostile work environment (one claim against GSC and StaffChex, and one claim against Select); a claim for failure to prevent sexual harassment (against all three defendants); a claim for sex discrimination (against all three defendants); and a retaliation

2

claim against GSC. The complaint also contains a sixth cause of action for negligent hiring, supervision, and retention (against GSC and StaffChex).

On October 19, 2012, Select filed a motion to compel arbitration.

On November 6, 2012, StaffChex filed a joinder to Select's motion to compel arbitration.

On November 16, 2012, GSC also filed a joinder to Select's motion to compel arbitration.

On December 19, 2012, plaintiff's attorney informed the trial court that she was dismissing Select. The matter was continued to March 6, 2013.

On February 21, 2013, plaintiff dismissed Select from the action.

On March 6, 2013, the trial court found GSC's joinder to Select's motion moot in light of plaintiff's request for dismissal of Select.

On March 7, 2013, GSC filed a motion to compel arbitration. GSC's motion was based on the grounds that an arbitration agreement may be enforced by a nonsignatory under theories of agency, equitable estoppel, and the third party beneficiary exception.

On March 20, 2013, StaffChex joined GSC's motion to compel arbitration.

On April 8, 2013, plaintiff filed her opposition. She noted she had not signed *any* paperwork with either of the two remaining defendants, and asserted GSC was not entitled to enforce arbitration in Select's place.

On May 17, 2013, the trial court denied GSC's motion to compel arbitration. The court found GSC, as a nonsignatory, had not shown that it satisfied the exceptions for either agency, equitable estoppel, or as an intended third party beneficiary. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

This appeal raises issues of law that are subject to our de novo review and independent judgment. (See *24 Hour Fitness, Inc. v. Superior Court* (1998) 66

3

Cal.App.4th 1199, 1212.)  To the extent the trial court resolves factual disputes in denying arbitration, we review its determinations for the existence of substantial evidence.  (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 (*Hotels Nevada*).)  But if there is no disputed extrinsic evidence, the lower court's arbitrability determination is reviewed de novo.  (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511-1512 (*Suh*).)  Because plaintiff's allegations and the language of the relevant arbitration provision are undisputed, we independently review the trial court's determination that defendants were not entitled to enforce the arbitration clause.

## II. *Governing Principles*

Our analysis follows established principles.  Public policy favors contractual arbitration as a means of resolving disputes.  (*Mercury Insurance Group v. Superior Court* (1998) 19 Cal.4th 332, 342.)  However, "[g]enerally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it.  ' "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration.  [Citation.]" ' [Citations.]" (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763 (*Westra*).) The rule that only parties to an arbitration agreement may be compelled to arbitrate is subject to several exceptions.  (*Suh, supra,* 181 Cal.App.4th at p. 1513 [discussing theories under which nonsignatories may be bound to arbitrate claims].)  When a nonsignatory seeks to enforce an arbitration provision, the nonsignatory bears the burden of establishing it must be treated as a party to the arbitration provision covering the dispute.  (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15 (*Jones*).)  Thus, it was defendants' burden to establish that they were entitled to invoke the Select arbitration agreement against plaintiff.

A petition to compel arbitration is a suit in equity seeking specific performance of an arbitration agreement.  (*Hotels Nevada, supra,* 203 Cal.App.4th at p. 347.)  Code of

4

Civil Procedure section 1281.2 provides that "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] [g]rounds exist for the revocation of the agreement."

**III.** *Equitable Estoppel*

Defendants first assert that plaintiff should be compelled to arbitrate her claims against them under the doctrine of equitable estoppel. "Under this theory, ' "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." ' [Citations.] The reason for this equitable rule is plain: One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract." (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1354.) "Because equitable estoppel applies only if plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant, we examine the facts alleged in the complaints." (See *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 229-230 (*Goldman*).)

Contrary to defendants' assertions on appeal, plaintiff is not making claims against either defendant based on the agreement that she had with Select. She is not asserting claims that " 'rely upon, make reference to, or are intertwined with claims' " based on her original employment contract. (*Jones, supra,* 195 Cal.App.4th at p. 20.) Rather, her complaint is based on sex discrimination that she experienced while working at the GSC warehouse. Thus, she is not unfairly asserting claims against the defendants that are based on her employment contract, while inequitably refusing to arbitrate

5

pursuant to provisions of the same contract. In fact, she is not asserting any contractual causes of action. "The sine qua non for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory *are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause*." (*Goldman, supra,* 173 Cal.App.4th at pp. 213-214, italics added.)

Defendants rely on *Boucher v. Alliance Title Co., Inc*. (2005) 127 Cal.App.4th 262 (*Boucher*). That case is distinguishable in that the plaintiff in that case had stated claims arising out of an alleged wrongful termination. In *Boucher,* the plaintiff entered into a written contract with an employer for the position of senior vice-president and division president for a three-year term. (*Id.* at p. 265.) The employment agreement stated that it could not be modified, waived, or discharged except in a writing signed by plaintiff and the employer. Shortly thereafter, the employer's operations were transferred to another entity, the nonsignatory defendant. The defendant refused to honor the plaintiff's contract with his original employer, and he refused to enter into a new agreement with the nonsignatory defendant. Thereafter, he was terminated. He sued both employers, alleging causes of action for nonpayment of wages, waiting time penalties, breach of the employment contract, breach of the covenant of good faith and fair dealing, unfair business practices, interference with contractual and prospective economic relations. (*Id.* at pp. 265-266.) Because his claims were based on the original contract (which contained an arbitration clause), the appellate court held the plaintiff was equitably required to arbitrate his causes of action against the nonsignatory defendant. (*Id.* at p. 273.)

Defendants assert that here, as in *Boucher,* "[i]t would be inequitable to allow [plaintiff] to use the terms or obligations of [her] employment contract with Select as the basis for her claims against GSC and StaffChex while simultaneously refusing to arbitrate under another clause of that same employment contract." However, unlike *Boucher,* almost all of plaintiff's claims are based on violations of FEHA. None are based on

6

violations of the terms of her employment contract with Select. Specifically, her claims do not rely on, presume the existence of, nor are they intertwined with any of the written contractual obligations. Accordingly, we hold plaintiff is not equitably estopped from avoiding arbitration.[1]

**IV.** *Agency Relationship*

Defendants next claim they may enforce the arbitration agreement because GSC and Select were in an agency relationship. "A nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." (*Westra, supra,* 129 Cal.App.4th at p. 765.) "To invoke the agency exception, [defendants] had to show that they 'represent[ed] another, called the principal, in dealings with third persons.' (Civ. Code, § 2295.)" (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 838.)

In *Westra,* the plaintiffs sued a real estate agent for fraud in connection with their purchase of a gas station. The purchase agreement identified the plaintiffs as the buyers, and named the seller as well as the agent. It included an arbitration provision that stated "Buyer, Seller and Agent" agreed to arbitrate controversies "aris[ing] with respect to the subject matter of this Purchase Agreement or the transaction contemplated . . . ."

---

[1] We also disagree with defendants' contention that plaintiff's special employer/employee relationship with GSC, standing alone, requires her to submit her claims to arbitration. As noted above, where the parties are not in a contractual relationship, the public policy favoring arbitration does not apply. In the absence of such a relationship, the general rule is that arbitration may not be compelled absent extenuating circumstances. (See *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 244-245 ["The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes by means other than the judicial process solely because all parties have chosen to arbitrate them."].) The special employment relationship arises out of the special employer's right to exercise control over the employee's activities. (*Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1183.) It does not arise out of the contractual relationship that exists between the employee and his or her general employer.

7

(*Westra, supra,* 129 Cal.App.4th at p. 762.) The plaintiffs and the seller signed the agreement and initialed the arbitration provision; the agent did not. The agent's petition to compel arbitration was denied by the trial court. On appeal, the agent contended it was entitled to enforce the arbitration provision because it had an agency relationship with both of the signatories. The appellate court ruled the agent was acting as the agent of both parties in a preexisting agency relationship, and the language of the arbitration provision indicated all three parties agreed to arbitration. (*Id.* at p. 766.) Additionally, the complaint alleged that the agent was acting as the agent of the seller and the plaintiffs in the transaction. (*Id.* at pp. 766-767.) The court concluded (1) the language of the arbitration provision was binding on the agent, (2) the plaintiffs were bound by their judicial admission, and (3) the agent was entitled to enforce the arbitration agreement. (*Id.* at p. 766.)

In the present case, we note the arbitration agreement does not reference either of the two appealing defendants. Nor did the defendants have a preexisting agency relationship with either Select or plaintiff. This is especially clear in the case of StaffChex, the temporary agency that employed Gonzalez. And GSC was merely one of Select's business clients. Accordingly, we conclude the exception for agency relationships does not apply.

Finally, while it is true the complaint alleges that all the defendants were acting as the agents of each other, this is a standard boilerplate allegation that does not specifically pertain to the contractual relationships any of the parties may have had with each other. "Complaints in actions against multiple defendants commonly include conclusory allegations that all of the defendants were each other's agents or employees and were acting within the scope of their agency or employment. Prominent treatises, while recognizing that the Supreme Court has described such allegations as 'egregious examples of generic boilerplate' [citation], still advise that 'such allegations may be necessary,' especially 'at the outset of a lawsuit, before discovery.' [Citations.] If the . . .

8

defendants' argument were sound, then in every multidefendant case in which the complaint contained such boilerplate allegations of mutual agency, as long as *one* defendant had entered into an arbitration agreement with the plaintiff, *every* defendant would be able to compel arbitration, regardless of how tenuous or nonexistent the connections among the defendants might actually be." (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 451.)[2] This is an absurd result, and supports our conclusions here.

## V. *Third Party Beneficiary*

Finally, defendants claim they may enforce the arbitration agreement because they were intended third party beneficiaries to the original employment contract.

Under Civil Code section 1559, a contract expressly made for the benefit of a third person may be enforced by that individual. The word "expressly" in this section means the negative of incidentally. (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1022 (*Spinks*).) Beneficiaries can be either incidental or intended beneficiaries, but only the latter qualify as third party beneficiaries who can enforce an agreement. (*Ibid.*)

Determining whether a contract was made for the benefit of a third person turns on the terms of the contract. If the terms necessarily require one party to confer a benefit on another, then the contract and the parties to it intend to benefit that person. (*Spinks, supra,* 171 Cal.App.4th at p. 1022.) It is not enough that the third party would incidentally benefit from performance—the parties must have intended to confer a benefit. As a result, those who are benefitted only incidentally or remotely are not third party beneficiaries. (*Ibid.*) However, the third person need not be named and may be a

---

[2] We further note that it is likely both GSC and StaffChex will seek to contest the truth of plaintiff's allegations of mutual agency as this litigation progresses.

member of a class of persons who the contracting parties intended to benefit. (*Id*. at p. 1023.)

Here, GSC was one of presumably many employers who Select contracted with to provide temporary staffing. In this regard, the situation is not unlike that of a buyer who intends to resell goods to a third party. In such cases, the buyer's eventual customers are not third party beneficiaries of the buyer's contract with the seller. (*Eastern Aviation Group, Inc. v. Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1453, citing *Corrugated Paper Products, Inc. v. Longview Fibre Co.* (7th Cir. 1989) 868 F.2d 908, 912.) Similarly, here GSC is not a third party beneficiary of Select's contract with plaintiff. The situation with StaffChex is, again, even more attenuated. Defendants do not explain how StaffChex, the employer of plaintiff's alleged abuser, can be deemed even an incidental beneficiary of the Select agreement. We conclude neither GSC nor StaffChex are intended third party beneficiaries of the arbitration agreement between plaintiff and Select.[3] In light of our conclusions, we need not address plaintiff's argument that the arbitration clause is unconscionable.

## DISPOSITION

The order is affirmed.[4] Plaintiff is entitled to her costs on appeal.

---

[3] Defendants argue that our ruling here "would permit a party's complete and utter avoidance of its agreement to arbitrate claims by dismissing just the signatory to such agreement, and ignoring the . . . strong policy supporting arbitration." However, such a result is not necessarily contrary to public policy: "Although California has a strong policy favoring arbitration [citations], our courts also recognize that the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived. [Citations.] Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration *cannot replace* an agreement to arbitrate." (*Marsch v. Williams* (1994) 23 Cal.App.4th 250, 254, italics added.)

[4] Defendants' request that, having affirmed the trial court's order, we should remand this case with an order to dismiss plaintiff's complaint in its entirety on the ground that she does not have a basis to maintain her employment-related claims against GSC and StaffChex is denied.

_____
Dondero, Acting P.J.

We concur:


_____
Banke, J.


_____
Becton, J.[*]

_____
[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11