Filed 6/14/13  Leo v. Golfsmith CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ED LEO et al., | D062262 |
| Plaintiffs, | |
| v. | (Super. Ct. No. 37-2010-00095326-CU-CR-CTL) |
| GOLFSMITH GP, LLC, et al., | |
| Defendants and Respondents; | |
| JANET E. SOBEL, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.

Janet E. Sobel, in pro. per., for Objector and Appellant.

Littler Mendelson, James E. Hart, Alaya B. Meyers, Heather M. Peck and Muizz Rafique for Defendants and Respondents.

The former plaintiffs' attorney in this action, Janet E. Sobel, appeals from an order imposing $6,150 in sanctions against her for opposing a motion to compel arising from her instructions to her clients not to answer deposition questions. As we will explain, we conclude that Sobel's contentions lack merit, and accordingly we affirm the order.

I

FACTUAL AND PROCEDURAL BACKGROUND

This action was filed by Ed Leo, Steve Surrey, Elton Campbell and Steve Frye (plaintiffs) — who allege they are members of the National Coalition for Men. Plaintiffs allege that they suffered gender discrimination when the Golfsmith retail stores, including those in California, held a "Women's Night" event on March 25, 2010. According to the complaint, Golfsmith excluded plaintiffs and other men from the stores on Women's Night, and women were given special discounts and benefits. Leo and Surrey allege that they were discriminated against when they attempted to shop and attend the Women's Night event at the Mission Valley store in San Diego. Campbell and Frye contend they were discriminated against at the Santa Ana store. The complaint named several Golfsmith entities as defendants,[1] as well as numerous equipment vendors who sponsored the Women's Night event. The complaint alleged violations of the Unruh Civil Rights Act (Civ. Code, §§ 51, 51.5); violations of the Gender Tax Repeal Act of 1995

---

[1]     The Golfsmith entities are Golfsmith GP, LLC; Golfsmith USA, LLC; and Golfsmith International, Inc. (collectively, Golfsmith).

(*id*., § 51.6); unfair and unlawful conduct under Business and Professions Code section 17200 et seq.; and negligence.[2]

Golfsmith noticed the depositions of Surrey and Leo. Prior to the depositions, Sobel and counsel for Golfsmith engaged in extensive written dialogue about the upcoming depositions, which was primarily focused on the length of the depositions and whether plaintiffs would provide information about their prior litigation history.

During Surrey's deposition, Sobel objected to numerous questions and instructed Surrey not to answer. Sobel objected to questions about other litigation in which Surrey was a plaintiff;[3] whether he had spoken to anyone about his deposition; basic background information such as his date of birth and where he lives and works; basic information about his membership in the National Coalition of Men; whether he had discussions with anyone before attending Golfsmith's Women's Night, why he attended, and how he learned of the event;[4] his activities immediately before and after traveling to the Golfsmith store; his coordination with his co-plaintiff, Leo, including their conversations

---

[2]    The causes of action for violation of Business and Professions Code section 17200 et seq. and negligence were dismissed by plaintiffs without prejudice while the relevant motions to compel and to impose sanctions were pending.

[3]    These questions included inquiries such as "Do you remember the names of any cases in which you've had your deposition taken?"

[4]    When asked why Surrey chose a particular Golfsmith location, Sobel objected on the basis that the question "invades his constitutional right of association, privacy, free speech, petition and redress." With respect to the questions about Surrey's interest in and knowledge of Women's Night, Sobel stated, "My instruction to him is to answer only based on things he saw at the Golfsmith location on the day of the event. I'm instructing him not to answer regarding anything he learned beforehand or outside of that time."

while at Women's Night; his interest in golf, prior purchases at Golfsmith, and intention to buy something at Golfsmith during Women's Night; whether there was a particular part of the Golfsmith store or a product he wanted to access during Women's Night; and whether he had ever discussed his recollection of the Women's Night event with anybody. In a typical objection, Sobel invoked "the constitutional right of privacy, association, free speech, and redress and petition" and stated, "we're just going to limit this deposition only to those things that you can establish are directly relevant to the case."[5]

During Leo's deposition, Sobel asserted the same constitutional objections as she made at Surrey's deposition and instructed Leo not to answer several questions. Sobel objected to questions about Leo's litigation history; Leo's conversations with Surrey prior to entering the store; and whether Leo had previously shopped at Golfsmith. According to Sobel, the objections were based on "privacy" and "all the same constitutional reasons."

After the depositions, counsel for Golfsmith wrote to Sobel to meet and confer about her objections and instructions to her clients not to answer. Counsel for Golfsmith explained, among other things, that the information sought during the depositions was not privileged and thus Sobel had improperly instructed her clients not to answer. In Sobel's response, she continued to assert that her clients had certain constitutional objections

---

5       For example, Sobel stated with respect to a question about where Surrey works, "Unless you can explain to me why it is centrally relevant to Golfsmith's defense of this case to know where he works, I am going to instruct him not to answer."

which justified their refusal to answer the questions unless Golfsmith could establish that the information it sought was directly relevant to its defense of the litigation. The tone of Sobel's letter was unprofessional and argumentative.[6]

After another round of correspondence between Sobel and Golfsmith's counsel that failed to resolve the discovery dispute,[7] Golfsmith filed a motion to compel further deposition responses and sought the imposition of $8,479.40 in monetary sanctions against Sobel.

Sobel argued in opposition to the motion that because her clients had asserted constitutional objections to all of the questions at issue, they were not required to provide responses unless Golfsmith established the direct relevancy of the information it sought. As Sobel explained, "Given plaintiffs [*sic*] clearly stated constitutional objections, Defendants were obligated before filing this motion to explain how asking questions . . .

---

[6]     Among other things, Sobel stated, "Frankly, I do not have time to engage in a dialogue about important constitutional principles of law with opposing counsel who are either not up to the analytical task or who, worse, seek to misrepresent the law"; and "When you submit your legal arguments to me, keep in mind that I am not an overworked and hurried court research attorney who may not take the time to check the holdings of the cases you cite . . . ."

[7]     Sobel continued her unprofessional comments in the next round of correspondence, stating among other things, "You have been licensed since December 2007, and seemingly have have [*sic*] working on this year-old plus case since last week, and you may think you know all there is to know, but you would have another think [*sic*] coming"; and "I cannot imagine your legal basis for your insisting on further testimony. I don't practice law with a crystal ball or a Ouija Board." Specifically referring to one of the deposition questions, she said, "Your 'Where did Mr. Surrey go after he left the store?' topic could lead you to ask him a host of other intrusive and irrelevant questions such as 'Did you have sex with anyone after you left the store and if so, how soon, was it with a woman or a man, and did that person ever play tennis or watch golf on TV'?"

5

could be directly relevant to this lawsuit . . . ."  Despite Sobel's claim that her instructions not to answer were justified because the questions intruded on Surrey's and Leo's constitutional rights, she did not clearly explain which constitutional rights were at issue in specific questions, instead referring broadly to the constitutional rights of association, petition and privacy.

At the hearing on the motion to compel and request for sanctions, Sobel took the position that regardless of whether the trial court *ultimately* ruled that a deposition question implicated a constitutional privilege, her mere assertion of a constitutional objection during the deposition —whether or not it was well-founded — justified her clients in refusing to answer unless Golfsmith could establish that the information it sought was directly relevant to the issues in the litigation.

The trial court granted the motion to compel and imposed sanctions against Sobel in the amount of $6,150.  The trial court rejected Sobel's contention, as characterized by the trial court, "that the mere assertion of a privacy or associational interest is sufficient to invoke the 'directly relevant' standard."  The trial court explained that the directly relevant standard "applies only when *the court* determines that the challenged discovery actually seeks the disclosure of constitutionally protected information."  Rejecting Sobel's claim that constitutional rights were implicated by the deposition questions, the court explained that "[i]t is difficult to see what privacy or associational interests are threatened by questions such as 'Did you come straight from work?' and 'So is it fair, then, to say you parked the car around 6:30?"  As the court explained, "Much of the information

6

sought here may ultimately prove irrelevant, but absent constitutional protection plaintiffs are not at liberty to refuse to answer."

Immediately after the trial court's ruling, plaintiffs substituted new counsel in place of Sobel, and Sobel appealed from the order imposing sanctions. (Code Civ. Proc., § 904.1, subd. (a)(12) [allowing immediate appeal of discovery sanctions exceeding $5,000].)

II

DISCUSSION

A.    *Applicable Legal Principles*

The applicable authority for the imposition of sanctions in this case is Code of Civil Procedure section 2025.480, subdivision (j). Under that provision, "[t]he court *shall* impose a monetary sanction . . . against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel an answer or production, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (*Ibid*., italics added.) "[T]he phrase 'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact." (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) Here, because Sobel unsuccessfully opposed Golfsmith's motion to compel, the imposition of sanctions was required unless Sobel established that she acted with substantial justification or that sanctions are otherwise unjust. (*Id*. at p. 1435 [the burden of proving substantial justification is on the party opposing the imposition of sanctions]; *Kohan v. Cohan* (1991)

7

229 Cal.App.3d 967, 971 [discovery statute requiring imposition of sanctions in the absence of substantial justification "allows one against whom sanctions are sought to show substantial justification to avoid the imposition of sanctions"].)[8]

We apply an abuse of discretion standard of review to the trial court's order imposing discovery sanctions. (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401.) Further, in the absence of an express finding by the trial court, we imply a finding that Sobel did not establish substantial justification. (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294 [a finding that the sanctioned party lacked substantial justification "is implied in the order awarding sanctions"].)

---

[8] Sobel relies on *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743 to argue that rather than placing the burden *on her* to show substantial justification for her opposition to the motion to compel, *Golfsmith* had the burden to prove that she *lacked* substantial justification. We reject Sobel's argument. *Diepenbrock* did not apply the rule that Sobel advocates. Instead, in a parenthetical string cite, *Diepenbrock* quotes from *Union Mut. Life Ins. Co. v. Superior Court* (1978) 80 Cal.App.3d 1, 15, which is a 1978 case interpreting a *former* discovery statute. (*Diepenbrock*, at p. 747.) Sobel relies on that quotation — which is not current law — to support her argument. However, *Diepenbrock* also quotes from a treatise setting forth the *current* rule under the *operative* discovery statute, which places the burden on the party opposing the sanctions to establish it acted with substantial justification. (*Diepenbrock*, at p. 747, quoting Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 8:846, p. 8E-152 (rev. # 1, 2012).) As that treatise states, "If the motion to compel is granted, to avoid sanctions the deponent must show 'substantial justification' for his or her refusal to answer the deposition question; e.g., reasonable grounds to believe the objection was valid when made and that opposition to the motion to compel therefore was justified." (Weil & Brown, *supra*, [¶] 8:846, p. 8E-152.)

8

B.    *Sanctions Were Warranted Because Sobel Did Not Establish That She Acted with Substantial Justification in Opposing the Motion to Compel*

Sobel's central appellate argument is that the trial court improperly focused on whether Sobel made any *valid* constitutional objections to the questions asked at Surrey's and Leo's depositions. Sobel contends that as long as she *asserted* a constitutional objection at deposition, the normal broad scope of discovery was supplanted by a much more demanding requirement that opposing counsel establish the *direct relevancy* of the information sought. Sobel argues that the trial court accordingly erred by stating that a higher standard of relevancy applies only if "the challenged discovery *actually* seeks the disclosure of constitutionally protected information." (Italics added.) According to Sobel, "no case dealing with the process for compelling litigants to answer questions they believe are protected by the right of privacy has discussed requiring the litigant to demonstrate as a pre-condition of protection that the 'discovery actually seeks the disclosure of constitutionally protected information' as this trial court concluded." She claims that "even a [*sic*] undefined and vague claim for constitutional protection" is sufficient to require opposing counsel to satisfy the standard of direct relevance. As we will explain, Sobel's position lacks merit. The trial court properly examined and rejected the validity of Sobel's constitutional objections.

We begin our analysis by observing that, in the absence of a privilege or intrusion on constitutional rights, a party is entitled to pursue a broad scope of discovery, under which the lack of relevance of the information sought is not a valid basis for instructing a client not to answer a deposition question. Pursuant to Code of Civil Procedure section

9

2017.010, "[u]nless otherwise limited by order of the court . . . , any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (*Ibid*.) "For discovery purposes, information is relevant if it 'might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement. . . .' [Citation.] Admissibility is not the test and information, unless privileged, is discoverable if it might reasonably lead to admissible evidence. [Citation.] These rules are applied liberally in favor of discovery [citation] . . . ." (*Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1546, italics deleted.) "[D]eponent's counsel should not even raise an objection to a question counsel believes will elicit irrelevant testimony at the deposition. Relevance objections should be held in abeyance until an attempt is made to use the testimony at trial." (*Stewart v. Colonial Western Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1014.)

Sobel supports her argument for a more restrictive scope of discovery in this case by relying primarily on *Britt v. Superior Court* (1978) 20 Cal.3d 844 (*Britt*). The *Britt* court explained that an exception to the normally broad scope of discovery arises when the deponent's constitutional right of associational privacy would be infringed were he forced to supply information about the groups to which he belongs. This is because "'compelled disclosure of affiliation with groups engaged in advocacy may constitute (an) effective . . . restraint on freedom of association.'" (*Id*. at pp. 852-853.) In such a case, only "[w]hen such associational activities are *directly relevant* to the plaintiff's claim, and disclosure of the plaintiff's affiliations is essential to the fair resolution of the

10

lawsuit" may "a trial court . . . properly compel such disclosure." (*Id*. at p. 859.) Here, Sobel contends that many of Golfsmith's deposition questions invaded her clients' right to associational privacy. We disagree. Golfsmith asked Surrey a few basic questions about his membership in the National Coalition for Men, but those questions did not intrude on Surrey's associational privacy because his membership was not a private matter within the context of this lawsuit. Surrey's *own complaint* in this action alleges that he is a member of the National Coalition of Men and describes the activities and goals of that organization. (*Gill v. Hearst Publishing Co.* (1953) 40 Cal.2d 224, 230 (*Gill*) [public information is not protected by the right to privacy].)

Sobel contends that her clients' constitutional right to redress of grievances and their right to privacy are also implicated by some of the questions posed by Golfsmith. Relying on the principle set forth in *Britt*, Sobel argues that the same "directly relevant" standard applies to questions implicating her client's right to petition for a redress of grievances or the right to privacy. (See *Tylo v. Superior Court* (1997) 55 Cal.App.4th 1379, 1387 (*Tylo*) [stating generally that "[t]he party seeking the constitutionally protected information has the burden of establishing that the information sought is directly relevant to the claims"].) As we will explain, we reject Sobel's argument because none of Golfsmith's questions implicated those constitutional rights.[9]

---

9 According to Sobel, she should not have been sanctioned because "sanctions cannot be imposed against an attorney for a legal position that was not raised by the adverse party either during the parties' meeting and conferring, through an offer of proof at the time of the deposition objections, or supported by case authority in defendants' motion to compel." Regardless of its legal merit, which we do not address, Sobel's

According to Sobel, the right to petition for a redress of grievances is implicated by Golfsmith's questions about other litigation in which Surrey and Leo were involved because it restricts their right of access to the courts. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 647-648 ["The right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances."].) However, asking about prior involvement in litigation does not restrict Surrey's or Leo's access to the courts, and Sobel cannot identify any way in which her clients' right of access to the courts would be restricted were they to answer Golfsmith's questions.[10] Further, asking about prior litigation does not implicate the right to privacy because the litigation is part of the public record. (*Gill*, *supra*, 40 Cal.2d at p. 230.)

Although Sobel takes the position that Golfsmith's questions also infringed on her clients' right to privacy, our review of the deposition transcripts reveals no question that

argument fails because it is not supported by the record. Golfsmith extensively met and conferred about its position that the information it sought was not constitutionally protected, and it set forth the same argument in its motion to compel. Sobel's rejection of that argument and her insistence on holding to her legal position, despite controlling authority, led to the imposition of sanctions.

10      In support of her argument that her clients' right to petition for redress is implicated by Golfsmith's deposition questions, Sobel refers to the *Noerr-Pennington* doctrine (*Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127; *Mine Workers v. Pennington* (1965) 381 U.S. 657), which is "a broad rule of statutory construction, under which laws are construed so as to avoid burdening the constitutional right to petition." (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1064.) "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." (*Sosa v. DIRECTV, Inc.* (9th Cir. 2006) 437 F.3d 923, 929.) That doctrine has no application here because Sobel has not identified a law whose application would burden Surrey's and Leo's constitutional right to petition by imposing liability on them.

12

threatens to intrude into private matters protected by a constitutional right to privacy. Cases recognizing a right to privacy in a discovery context have involved sensitive private subjects such as marital difficulties (*Tylo*, *supra*, 55 Cal.App.4th 1379), medical procedures (*Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839), personal finances (*Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 664), sexual relationships (*Morales v. Superior Court* (1979) 99 Cal.App.3d 283, 289-290) and the contents of a party's workplace personnel file (*El Dorado Savings & Loan Assn. v. Superior Court* (1987) 190 Cal.App.3d 342, 345). No such matters were inquired about in this case. Instead, Sobel invoked the right of privacy to object to questions on such basic and unobtrusive subject matter as Surrey or Leo's interest in golf and golf equipment; what their activities were immediately before and after traveling to the Golfsmith store; whether they discussed the events at the Golfsmith store with anyone else; their date of birth; place of employment; and the neighborhood in which they live. Sobel had no reasonable basis for believing that those questions — or others like them — called for information protected by the constitutional right to privacy.

Because the trial court properly concluded Sobel had not asserted a valid constitutional objection, it correctly rejected Sobel's contention that Golfsmith was required to establish that the information sought was directly relevant to the litigation. We find no support in the case law for Sobel's contention that a mere *claimed* infringement of an associational right to privacy is sufficient to require the opposing party to establish that the information it seeks is directly relevant. Any such rule is nonsensical because it would restrict the normally broad scope of discovery, even when

13

such a restriction is not warranted to protect intrusion on constitutional rights. Such a rule is also contrary to the basic analytical approach applied in *Britt* and all of the other cases that consider whether certain private information was required to be disclosed in discovery. In *Britt*, for example, the court analyzed as *an initial matter*, whether the associational right to privacy was implicated by the discovery requests at issue, and *then* it proceeded to determine whether that information was directly relevant to the litigation. (*Britt*, *supra*, 20 Cal.3d at p. 852.)

Sobel claims that *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347 establishes that "the mere claim of a constitutional right can rise to protection." *Planned Parenthood* does not support Sobel's argument. On the contrary, that case extensively analyzes the preliminary issue of whether the challenged discovery implicated the constitutional right to privacy, rejecting the suggestion that "no constitutional issue is presented by this case." (*Id*. at p. 358.) Only *after* establishing the existence of a valid constitutionally-based objection to the discovery does *Planned Parenthood* proceed to determine whether a response to the discovery is nevertheless warranted because of the issues presented in the litigation. (*Id*. at p. 360.) Thus, under the existing case law, Sobel was not justified in believing that a mere assertion of a constitutional objection — *even if legally unfounded* — could require Golfsmith to establish the direct relevancy of the information it sought.[11]

---

[11] Sobel argues that Golfsmith could not establish the direct relevancy of the information it sought merely because the subject matter was raised in the complaint or because it related to the complaint's prayer for relief. This argument, however,

In sum, the trial court properly analyzed whether the information sought by Golfsmith implicated Surrey and Leo's constitutional rights. Having determined that no valid constitutional objections applied in this case, the trial court was well within its discretion to conclude that sanctions were warranted because Sobel was not substantially justified in instructing her clients not to answer the deposition questions on the basis of her legally unfounded objections.

DISPOSITION

The order imposing sanctions on Sobel is affirmed.

IRION, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.

---

presupposes Golfsmith was *required* to show direct relevancy. As we have described, because no constitutionally protected information was implicated by Golfsmith's questions, Golfsmith was entitled to discovery even if the information sought was *not* directly relevant.

15